6-96-028-CV Long Trusts v. Dowd 



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00141-CV
______________________________



IN RE: JADON MARQUE BALLARD





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Original Mandamus Proceeding





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter



MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Jadon Marque Ballard has filed a petition for writ of mandamus in which he asks this Court
to order the 208th Judicial District Court of Harris County, Texas, to vacate the judgment of
conviction in trial court cause number 915943 and to dismiss the cause with prejudice, based on his
assertion the evidence presented at his trial shows his actual innocence. That conviction is presently
on appeal before this Court pursuant to an order transferring the appeal from the Houston First Court
of Appeals to this Court.
Â Â Â Â Â Â Â Â Â Â Â Â This Court has jurisdiction to issue a writ of mandamus against a "judge of a district or
county court in the court of appeals district." Tex. Gov't Code Ann. Â§ 22.221(b) (Vernon Supp.
2004). Harris County is not within the territorial jurisdiction of this Court. Tex. Gov't Code Ann.
Â§ 22.201(g). We find nothing in this case which confers jurisdiction on this Court to decide this
separate mandamus proceeding.


 See In re Davis, 87 S.W.3d 794, 795 (Tex. App.âTexarkana 2002,
orig. proceeding).
Â Â Â Â Â Â Â Â Â Â Â Â The counties that are contained in the districts for the courts of appeals are set out in Tex.
Gov't Code Ann. Â§ 22.201 (Vernon Supp. 2004). Our civil jurisdiction is set out in Tex. Gov't
Code Ann. Â§ 22.220 (Vernon 1988), which restricts our jurisdiction to those counties. Our
mandamus jurisdiction is set out in Section 22.221(b), which provides us with authority to issue
writs of mandamus against a judge of a district or county court in our district.
Â Â Â Â Â Â Â Â Â Â Â Â There is no statutory authority which would permit this Court to exercise mandamus
jurisdiction over a mandamus proceeding brought against a judge of a court sitting in Harris County,
Texas. 
Â Â Â Â Â Â Â Â Â Â Â Â Even if we had jurisdiction to address this mandamus on its merits, to establish entitlement
to mandamus relief, the relator must show that there is no adequate remedy at law to redress the
alleged harm and that the act to be compelled must be purely ministerial. Alvarez v. Eighth Court
of Appeals, 977 S.W.2d 590, 591 (Tex. Crim. App. 1998) (orig. proceeding); Stotts v. Wisser, 894
S.W.2d 366, 367 (Tex. Crim. App. 1995) (orig. proceeding). In this case, there is an adequate
remedy at law: the direct appeal which is presently pending before this Court. 
Â Â Â Â Â Â Â Â Â Â Â Â We dismiss the petition for writ of mandamus for want of jurisdiction.
Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â November 3, 2003
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â November 4, 2003



 Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00109-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  JAMES EHRHARDT,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 115th
Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Marion County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial
Court No. F14011

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Opinion by Justice Moseley








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  O P I N I O N

Â 

Â Â Â Â Â Â Â Â Â Â Â  Convicted by a jury of
theft from Paula Painter of over $1,500.00 but less than $20,000.00, James
Ehrhardt opted to have the trial court determine his sentence.Â  Ehrhardt was sentenced to two yearsÂ
imprisonment, but the sentence was suspended, and Ehrhardt was placed on three
yearsÂ community supervision and assessed restitution in the sum of $10,000.00.[1]Â  

Â Â Â Â Â Â Â Â Â Â Â  Contact between Ehrhardt
and Painter arose after PainterÂs brotherÂs house was damaged by fire and a
hazard insurance company supplied approximately $100,000.00 for its
restoration. Â Since PainterÂs brother was
ill and hospitalized (eventually expiring during the course of the
rehabilitation of the house), Painter was handling the arrangements for repair
on his behalf.Â  In so doing, she entered
into an oral contract with Ehrhardt, the terms of which were disputed. Â Painter and a person who overheard their
negotiations testified that Ehrhardt agreed to complete all of the repairs for
$65,000.00, while Ehrhardt maintained during grand jury testimony (provided to
the jury) that the contract was for an indeterminate amount wherein he would
receive payment for his time, his expenses, and a percentage of the costs in
compensation.Â  

Â Â Â Â Â Â Â Â Â Â Â  As work slowly
progressed, Painter ultimately paid Ehrhardt seven installments of money
totaling $86,422.50.Â  When Ehrhardt again
requested additional funds, Painter refused.Â 
Ehrhardt walked off the job and Painter filed criminal charges.Â  Painter eventually hired another contractor
to finish the job.[2]Â  

Â Â Â Â Â Â Â Â Â Â Â  On appeal, Ehrhardt
argues the evidence is legally and factually insufficient.[3]Â  Under the general theft statute
through which Ehrhardt was charged, in order to establish that Ehrhardt
committed theft, the State had the burden to establish that (1) Ehrhardt, (2)
with intent to deprive the owner (Painter) of property, (3) unlawfully
appropriated property, (4) without the effective consent of the owner.[4]Â  Tex.
Pen. Code Ann. Â§ 31.03 (Vernon Supp. 2010); Baker v. State, 986 S.W.2d
271, 274 (Tex. App.ÂÂTexarkana 1998, pet. refÂd).Â  ÂAppropriate means any Âexercise of control overÂ the personalty in question . . . .ÂÂ  McClain
v. State, 687 S.W.2d 350, 353 n.7 (Tex. Crim. App. 1985).Â  The Texas Penal Code provides that consent is
ineffective if Âinduced by deception. . . .Â[5]Â  Tex.
Penal Code Ann. Â§ 31.01(3)(A) (Vernon Supp. 2010).Â  ÂInduceÂ means Âto bring about, produce, or
cause.ÂÂ  Random House WebsterÂs Unabridged Dictionary 975 (2d ed.
2001).Â  Ehrhardt argues the State failed
to establish that Ehrhardt had an intent to deprive and appropriated property
without the ownerÂs effective consent.Â  On appeal, the State has argued two theories
of guilt.Â  According to the State,
Ehrhardt committed theft by providing Painter with a fraudulent accounting[6]
and by misapplication of the funds Painter paid to Ehrhardt.Â  

Â Â Â Â Â Â Â Â Â Â Â  In
the Brooks plurality opinion, the
Texas Court of Criminal Appeals found Âno meaningful distinction between the Jackson v. Virginia[7] legal-sufficiency standard and the Clewis[8]
factual-sufficiency standard, and these two standards have become
indistinguishable.ÂÂ  Brooks, 323 S.W.3d at 902 (4-1-4 decision).Â  In a concurring opinion, Judge Cochran
pointed out that the United States Supreme Court has rejected a legal
sufficiency test that requires a finding that Âno evidenceÂ supports the
verdict because it affords inadequate protection against potential
misapplication of the Âreasonable doubtÂ standard in criminal cases.Â  Id.
at 916Â17 (Cochran, J., concurring).Â 
Rather than meeting a mere Âno evidenceÂ test, legal sufficiency is
judged not by the quantity of evidence, but by the quality of the evidence and
the level of certainty it engenders in the fact-finderÂs mind.Â  Id.
at 917Â18.Â  Under Jackson, we consider the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.Â  Jackson,
443 U.S. at 318Â19.Â  We are directed to
subject challenges to the sufficiency of the evidence to the hypothetically-correct jury charge
analysis.Â  Malik, 953 S.W.2d at 240.
Â 

Â Â Â Â Â Â Â Â Â Â Â  When
the charged conduct concerns a matter for which the alleged victim and the
accused had a contractual relationship, certain concerns arise.Â  Â[A] claim of theft made in connection with a
contract requires proof of more than an intent to deprive the owner of property
and subsequent appropriation of the property.ÂÂ 
Baker, 986 S.W.2d at 274.Â  Neither the mere failure to perform a
contract[9]
nor the mere failure Âto return or pay back money after failing to perform a
contract, for the performance of which the money was paid in advance,Â[10]
are sufficient to establish guilt of theft.Â 
When alleging theft in connection with a contract, the State Âmust prove
the defendant did not perform the contract and knew he was not entitled to the
money, not merely that there is a dispute about the amount rightfully owed.ÂÂ  Jacobs
v. State, 230 S.W.3d 225, 229 (Tex. App.ÂÂHouston [14th Dist.] 2006, no
pet.).Â  As this Court explained in Baker, Âunder the terms of [a contract]
individuals typically have the right to Âdeprive the owner of property,Â albeit
in return for consideration.ÂÂ  Baker, 986 S.W.2d at 274.Â  The Texas Court of Criminal Appeals has noted
Âwhat separates lawful acquisitive conduct from theft is knowledge of a crucial
Âcircumstance surrounding the conductÂ -- that the acquisition is Âwithout the
ownerÂs consent.ÂÂ Â McClain, 687 S.W.2d at 354 (footnotes omitted).Â  Thus, the focus of our inquiry is not whether
Ehrhardt deprived Painter of property, but whether Ehrhardt unlawfully deprived
Painter of property without PainterÂs effective consent.

Â Â Â Â Â Â Â Â Â Â Â  We
will first examine whether Ehrhardt ever intended to perform the contract and
whether his promise to perform was an illusion.Â 
Second, we will examine whether the accounting Ehrhardt provided to
Painter rendered PainterÂs subsequent payments to be without effective
consent.Â  Concluding, we will examine
whether EhrhardtÂs use of the bank account created for the construction project
in dispute constituted theft.Â  

I.Â Â Â Â Â Â Â Â Â  The Evidence Does Not
Establish the Contract Was a Ruse

Â Â Â Â Â Â Â Â Â Â Â  One
method of establishing theft, in connection with a contractual dispute, is to
establish the Âappellant had no intention of fulfilling his obligation under
the agreement, and his promise to perform was Âmerely a ruse to accomplish
theft by deception.ÂÂ Â Jacobs, 230 S.W.3d at 229 (quoting King v. State, 17 S.W.3d 7, 15 (Tex. App.ÂÂHouston
[14th Dist.] 2000, pet. refÂd)).Â  While
the State does not explicitly argue this theory of guilt, we believe it is
prudent to first clarify there is insufficient evidence the contract was an
illusion or a ruse.

Â Â Â Â Â Â Â Â Â Â Â  The
record establishes that a substantial amount of work was performed.Â  Painter testified Ehrhardt had ten to twelve
workers on the job in its early stages.Â  Painter
elaborated on the work that Ehrhardt caused to be done: Â he performed electrical work,[11]
removed the fire debris, installed temporary walls, installed new sewer lines,
repaired rafters in the attic, tore down a rotten awning adjacent to the house,
removed the roof of the house, removed part of the concrete slab, retextured
remaining drywall, removed a fireplace, removed an outside wall, installed a
header in an addition, installed drywall (except for the basement), rebuilt
ceiling joists, installed a new concrete slab for the addition, installed
decking on the main house, roughed in the addition, installed a door and eight
windows on the addition, installed shingles, installed (but did not finish)
cabinets, placed the furnace in place on the premises (but failed to fully
install it), and painted ceilings and walls.Â 
Ehrhardt alleged the project was ninety-five percent complete.Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Ehrhardt,
nevertheless, was far from completion.Â 
The siding on the main house had not been replaced, the air-conditioning
system and duct work had not been installed, and there was still some smoke
damage that needed to be cleaned.Â  In
addition, the light fixtures remained uninstalled, some molding and countertops
needed to be installed, and some of the plumbing had to be redone.[12]Â  Painter testified that Ehrhardt had installed
a wall incorrectly and not remedied the error.[13]Â  Painter testified the kitchen cabinets had to
be coated with Kilz and the cabinets had to be modified.Â  EhrhardtÂs failure to complete the project or
do the work correctly, however, is insufficient, by itself, to support a
finding of guilt.Â  

Â Â Â Â Â Â Â Â Â Â Â  The
amount of work performed can negate any intent to deprive at the time of
formation of the contract.Â  See Cox,
658 S.W.2d at 670.Â  In this case,
Ehrhardt performed a substantial amount of repairs on the house.Â  No rational juror could have concluded, at
the time the contract was formed, that Ehrhardt had no intention of fulfilling
his obligation under the agreement or have concluded that the contract was a
mere illusion or ruse.

II.Â Â Â Â Â Â Â  The Accounting Provided
to Painter Is Insufficient Evidence

Â Â Â Â Â Â Â Â Â Â Â  The
State presents what would be a more problematic issue by arguing that Ehrhardt
committed theft by providing Painter with a false accounting[14]
prior to her final payment. Â Painter
insisted on receiving an accounting prior to her final $15,000.00 payment to him.Â 
Although Ehrhardt provided Painter with an accounting as demanded, this
accounting contained substantially incorrect entries.Â  After Painter had filed criminal charges,
Ehrhardt provided Painter with a second accounting which was quite different
from the first.Â  The first
accounting showed expenses totaling $71,490.00.Â 
The State introduced evidence that a number of the expenses were
false.Â  For example, the first accounting
specifies the building permit cost $1,000.00 but the building permit only cost
$250.00.Â  The accounting listed the cost
for Transit Mix (concrete) as being $3,113.00, but the actual cost was $866.00.Â  The State also argued the first accounting
was false because it did not match the second accounting and because, at the
time Ehrhardt provided Painter with the first accounting, over $20,000.00
remained in the bank account.[15]Â  Ehrhardt concedes the first accounting was
false, but argues the false accounting was insufficient to establish
theft.Â  

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Intent to Deprive Can Be Formed After the
Formation of the Contract

Â Â Â Â Â Â Â Â Â Â Â  Ehrhardt
argues that the State was obligated to establish Ehrhardt intended to
unlawfully deprive Painter of property when the contract was formed.Â  Under EhrhardtÂs stated position, once a
contract is formed absent the requisite criminal intent, the dispute remains
always civil in nature.Â  We
disagree.Â  While we agree Â[r]elevant
intent to deprive the owner of property is the accusedÂs intent at the time of
the taking,Â[16]
we disagree that a criminal intent to deprive cannot arise after the formation
of the contract.Â  This Court has
previously stated Â[a] claim based upon malfeasance in connection with a
contract requires proof of the false pretext or fraud in order to become a
viable criminal prosecution.ÂÂ  Baker, 986 S.W.2d at 274.Â  The requisite criminal intent can be formed
after the formation of a contract.Â  We
emphasize, however, the deprivation of property cannot occur prior to the
formation of the requisite intent.Â  Cortez v. State, 582 S.W.2d 119, 120Â21
(Tex. Crim. App. [Panel Op.] 1979).Â 
Thus, if the intent to unlawfully deprive did not develop until after
the formation of the contract, there must be an additional deprivation of
property in connection with the recently formed criminal intent. 

Â Â Â Â Â Â Â Â Â Â Â  B.Â Â Â Â Â Â Â  There Is Sufficient Evidence of an
Intent to Deprive

Â Â Â Â Â Â Â Â Â Â Â  Ehrhardt argues there was no intent
to unlawfully deprive because the errors in the fraudulent accounting were
merely the result of poor bookkeeping and the hasty preparation of that
accounting.Â  Kelley Ehrhardt (EhrhardtÂs
former wife, who acted as his bookkeeper) testified she has never Âbeen trained
as a bookkeeper.ÂÂ  Kelley explained the
inaccuracies in the first account arose as a result of her instructions from
Ehrhardt that the accounting should be a ÂguesstimateÂ and the time in which
she had to prepare it.Â  Kelley testified
that whereas she only spent three hours preparing the first (fraudulent)
accounting, she expended three days in preparing the second accounting.Â  For example, Kelley explained the overcharge
for the permit by claiming they were including estimated costs of the final
inspection.Â  

Â Â Â Â Â Â Â Â Â Â Â  Ehrhardt
also argues that the expenses he incurred on the job exceeded the total
payments made by Painter.Â  The record
does contain some evidence that Ehrhardt performed work roughly equivalent to
the total payments made by Painter.Â  After being indicted, Ehrhardt provided
another accounting (the second) which shows expenses incurred in excess of
PainterÂs payments.[17]Â  Ehrhardt claims that this evidence in
the second accounting establishes that the errors in the first accounting were
unintentional.Â  StateÂs Exhibit 25 (the
second accounting, prepared after the indictment was issued), indicates
expenses were incurred in excess of PainterÂs payments.Â  Ehrhardt
introduced receipts and time sheets to support Exhibit 25.[18]Â  According to this accounting, EhrhardtÂs
expenses exceeded PainterÂs payments by $1,927.77.Â  While personal gain is normally considered in
determining whether a person has the requisite intent to commit theft,[19]
personal gain is not an element of theft.Â 
The evidence by Ehrhardt that his total expenses exceeded PainterÂs
payments does not prevent a rational juror from concluding that Ehrhardt
possessed the requisite intent to unlawfully deprive.

Â Â Â Â Â Â Â Â Â Â Â  A
rational juror could have disbelieved KelleyÂs testimony.Â  The first accounting falsehoods are
sufficient for a rational juror to infer an intent to deprive.Â  The jury usually must infer intent from
circumstantial evidence, rather than direct proof.Â  See Guevara
v. State, 52 S.W.3d 45, 50 (Tex. Crim. App. 2004).Â  The jury can draw reasonable inferences so
long as each inference is supported by evidence presented at trial.Â  Hooper
v. State, 214 S.W.3d 9, 15Â16 (Tex. Crim. App. 2007).Â  ÂThe reviewing court must give deference to Âthe
responsibility of the trier of fact to fairly resolve conflicts in testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.ÂÂÂ  Id. at 13 (quoting Jackson, 443 U.S. at 318Â19).Â  The evidence is sufficient that Ehrhardt had
the requisite intent to unlawfully deprive.

Â Â Â Â Â Â Â Â Â Â Â  C.Â Â Â Â Â Â Â  The Deception Did Not Induce PainterÂs
Consent

Â Â Â Â Â Â Â Â Â Â Â  Alternatively, Ehrhardt argues the
deception did not induce PainterÂs consent.Â 
The record contains some evidence the first accounting induced PainterÂs
consent.Â  During direct examination,
Painter testified that when Ehrhardt requested the final payment, she initially
refused to renegotiate the contract, requested an accounting, and requested copies
of the receipts as a condition of advancing more money.Â  Although Painter did not receive the
receipts, Painter did receive the first accounting and subsequently paid
Ehrhardt an additional $15,000.00 upon receipt of the accounting.Â  A rational inference from this evidence would
be that the deception contained in the first accounting induced PainterÂs
consent.Â  

Â Â Â Â Â Â Â Â Â Â Â  However,
PainterÂs testimony on cross-examination directly contravenes this
inference.Â  Painter testified the
deception contained in the first accounting did not induce the final
payment.Â  Instead, Painter testified she
had doubts as to the validity of the accounting and, despite these doubts and
the refusal to provide receipts, made the final payment.Â  On cross-examination, the following colloquy
occurred:

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  [By Painter]Â  I refused to pay him anymore money until I
received the receipts from wherever he got the materials and payroll until I
could match them up and see what had gone on with all these funds.Â  At that time I was doubting the validity of
this paper, the original paper and wanted to double check and cross check
exactly what had gone on with the receipts.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  [By Defense Counsel]Â  Did you give Mr. Ehrhardt any money as a
result of him giving you that first paper?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  No, all the deposits are here that - - 

Â 

. . . .

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  So it didnÂt - - it didnÂt induce you to
give him any money, it was just something you asked for that he provided to
show where money had gone?

Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Yes, and then I asked for the receipts
to double check it against his claim.Â  He
refused to give me the receipts.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  Okay, when you finally got the receipts,
the total amount of those receipts -- 

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  Sir, I never got the receipts.

Â 

On direct examination, Painter
had testified that Ehrhardt told her the receipts were Ânone of [her] business.ÂÂ  Although Painter never received the receipts,
Painter testified that the first accounting did not induce her final $15,000.00
payment.Â  

Â Â Â Â Â Â Â Â Â Â Â  As
Judge CochranÂs concurring opinion in Brooks
emphasized, the mere existence of some evidence is not sufficient in criminal
casesÂthere must be sufficient evidence for a rational juror to reach a
conclusion beyond a reasonable doubt.Â  Brooks,
323 S.W.3d at 917 (Cochran, J., concurring).Â 
Legal sufficiency is judged not by the quantity of evidence, but by the
quality of the evidence and the level of certainty it engenders in the
fact-finderÂs mind.Â  Id. at
918.Â  In Brooks, the Texas Court of Criminal Appeals provided the following
analogy:Â  

The store clerk at trial
identifies A as the robber. Â A properly
authenticated surveillance videotape of the event clearly shows that B
committed the robbery. But, the jury convicts A. Â It was within the juryÂs prerogative to
believe the convenience store clerk and disregard the video. Â But based on all the evidence the juryÂs finding of guilt is not a rational
finding.

Â 

Brooks,
323 S.W.3d at 907 (quoting Johnson,
23 S.W.3d at 15 (McCormick, P.J., dissenting)).

Â Â Â Â Â Â Â Â Â Â Â  Similar
to the above analogy, PainterÂs testimony prevents the jury from inferring the
deception induced PainterÂs consent.Â  The
State has not directed this Court to where in the record Painter testified the
deception did, in fact, induce her last payment.Â  On cross-examination, Painter offered a few
explanations for why she continued to pay Ehrhardt.Â  Painter testified Â[M]y brother was dying, I
was busy, and I was overwhelmed in many many ways.ÂÂ  Painter also testified, ÂWe were too far
invested.ÂÂ  A rational juror could not
have concluded, beyond a reasonable doubt, the first accounting induced Painter
to make the final payment, despite the fact that she made receipt of that
accounting a condition for the delivery of the final payment.Â  A rational juror could not have concluded the
first accounting brought about, produced, or caused Painter to make the final
payment.

Â Â Â Â Â Â Â Â Â Â Â  While
Painter paid Ehrhardt more than she was legally obligated under the original
oral contract, this overpayment is not necessarily evidence of theft. Â A person does not commit a crime by re-negotiation
of a contract after its formation.Â  While
not legally required to agree to different terms, parties can agree to
different terms if desired.Â  Painter
admitted she told Ehrhardt several times during the early stages of the project
to inform her if he needed more money.Â 
If money was voluntarily given to the appellant and there is
insufficient evidence in the record to show that the money was obtained by
deception, the conviction cannot stand.Â  Phillips, 640 S.W.2d at 294; Jacobs, 230 S.W.3d at 229Â30; Baker, 986 S.W.2d at 274. Â If Painter chose to pay Ehrhardt more than she
was legally obligated to pay, that was her choiceÂprovided the choice was not
influenced by deception.Â  Because there
is insufficient evidence that EhrhardtÂs deception in the first accounting
induced PainterÂs consent, the first accounting fails to provide sufficient
evidence that Ehrhardt committed theft.

III.Â Â Â Â Â Â  Misappropriation of
Funds

Â Â Â Â Â Â Â Â Â Â Â  The
StateÂs remaining argument is that the misappropriation of funds in the bank
account opened by Ehrhardt for PainterÂs construction project is sufficient
evidence of theft.Â  Shortly after forming
the oral contract, Ehrhardt opened an account at Citizens National Bank.Â  Painter testified that Ehrhardt told her that
Â[t]he account would be strictly for this project and all the receipts would
match, everything would match up through this account.Â[20]Â  The evidence established Ehrhardt used the
funds in the account not only for the Painter reconstruction job, but also for
personal use and other construction projects.Â 
We note, though, that Ehrhardt had deposited, both before and after the
first accounting, money into the account from sources other than Painter.Â  According to the State, EhrhardtÂs use of the
account as a slush fund[21]
is sufficient evidence Ehrhardt committed theft.

Â Â Â Â Â Â Â Â Â Â Â  In Baker, this Court concluded the defendantÂs act of writing checks
payable to ÂcashÂ with specific notations that were fraudulent was sufficient
evidence to support a juryÂs verdict.Â  Baker, 986 S.W.2d 271.Â  Baker,
however, is distinguishable from the current case because the bank account in Baker belonged to the victim.Â  Id.Â  The defendant was merely added as a signatory
to an account owned by the victim.Â  Id.Â 
In this case, the evidence establishes EhrhardtÂnot the victimÂowned the
bank account.Â  

Â Â Â Â Â Â Â Â Â Â Â  The State
presumes the money in the account belonged to Painter.Â  Penny Moore, an employee of Citizens National
Bank (where the account in question was located) testified that Ehrhardt was
designated the owner of the account and Kelley also had access to the
account.Â  At oral argument, the State
argued for the first time that the funds were held in trust.Â  While the law requires funds paid to a
contractor to be held in trust,[22]
the jury was never instructed on this law and Ehrhardt was not charged under
the statute which would create such a trust.Â  The State did not allege that the
funds were held in trust in the indictment and the jury was not instructed the
funds were held in trust.Â  The jury was
merely presented with evidence that the account was owned by Ehrhardt. Â Painter wrote checks payable to
Ehrhardt, relinquishing any control over the money when Ehrhardt used it for
other purposes.Â  Without any allegation
that these funds were held in trust, a rational juror could not have concluded
that Ehrhardt exercised control over PainterÂs property.Â  Rather, the evidence only established that
Ehrhardt exercised control over his own property, which had been turned over to
him by Painter.Â  While the transactions
are evidence of bad business practices and might be a violation of the Texas
Property Code,[23]
they are not evidence of theft as alleged in the indictment.Â  

Â Â Â Â Â Â Â Â Â Â Â  Further,
although the record established deception, a rational juror could not have
concluded EhrhardtÂs deception induced PainterÂs consent to deposit money into
the account.Â  We note the State does not
argue the deception (i.e., the account would be used only for PainterÂs
construction project) induced Painter to make additional payments to
Ehrhardt.Â  Further, the State has not
directed this Court to any place in the record revealing evidence that EhrhardtÂs
deception induced PainterÂs consent. Â The
evidence merely establishes deception.Â 
There is no evidence the deception brought about, produced, or caused
Painter to consent to the appropriation of property.Â  A rational juror could not infer, beyond a
reasonable doubt, that the deception induced Painter to make additional
payments to Ehrhardt.Â  The evidence is
insufficient to support a finding that the deception induced PainterÂs consent.


IV.Â Â Â Â Â Â  Conclusion

Â Â Â Â Â Â Â Â Â Â Â  We
conclude, based on the evidence before this Court, that no rational juror could
have found, beyond a reasonable doubt, that Ehrhardt was guilty of theft.Â  The evidence established Ehrhardt had poor
business practices, but the evidence did not establish Ehrhardt committed
theft.Â  Ehrhardt did not commit theft by
failing to complete his contractual obligations.Â  Although the two theories offered by the
State (based on the false accounting and on misapplication of bank funds) both
establish deception, each fails to establish that Ehrhardt committed
theft.Â  Because Painter testified that
the false accounting did not induce her to make the final payment to
Ehrhardt,Â  no rational juror could have
concluded, beyond a reasonable doubt, the deception in the first accounting
induced Painter to consent to the final payment.Â  Although Ehrhardt committed deception in
representing to Painter that the bank account would be used solely for PainterÂs
project, no rational juror could have concluded, beyond a reasonable doubt,
either that the funds in the account were PainterÂs property or that the
deception in the first accounting induced PainterÂs consent to additional
payments.Â  Viewed in a light most
favorable to the prosecution, no rational juror could have found, beyond a
reasonable doubt, all the elements of theft.

Â Â Â Â Â Â Â Â Â Â Â  For the reasons stated, we reverse
EhrhardtÂs conviction and render a judgment of acquittal.Â  

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bailey
C. Moseley

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  January 25, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  February 25, 2011

Â 

Publish 











[1]The
trial courtÂs sentence is consistent with the agreed recommendation of the
State and defense. 

Â 





[2]Painter
paid this contractor approximately $30,000.00.Â 


Â 





[3]However,
on oral argument, Ehrhardt acknowledged the decision in Brooks v. State, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010), a
plurality opinion which abolished the factual sufficiency review established by
Clewis v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996), and its progeny.Â  With
this, Ehrhardt acknowledges the inefficacy of the factual insufficiency
argument.Â  Accordingly, we do not address
it.

Â 





[4]Section
31.03 provides:

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (a)Â Â Â Â Â Â Â Â Â Â  A person commits an offense if he unlawfully appropriates
property with intent to deprive the owner of property.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (b)Â Â Â Â Â Â Â Â Â Â  Appropriation of property is unlawful if:

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (1)Â Â Â Â Â Â Â Â Â Â  it is without the ownerÂs effective
consent;

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  . . . .

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (e)Â Â Â Â Â Â Â Â Â Â  Except as provided by Subsection (f), an offense under
this section is:

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  . . . .

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (4)Â Â Â Â Â Â Â Â Â Â  a state jail felony if:

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (A)Â Â Â Â Â Â Â Â Â  the value of the property stolen is
$1,500 or more but less than $20,000, or the property is less than 10 head of
sheep, swine, or goats or any part thereof under the value of $20,000; . . . .

Â 

Tex.
Penal Code Ann. Â§ 31.03.Â  ÂDeceptionÂ
is defined as:

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (A)Â Â Â Â Â Â Â Â Â  creating or confirming by words or conduct a false
impression of law or fact that is likely to affect the judgment of another in
the transaction, and that the actor does not believe to be true;

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (B)Â Â Â Â Â Â Â Â Â  failing to correct a false impression of law or fact that
is likely to affect the judgment of another in the transaction, that the actor
previously created or confirmed by words or conduct, and that the actor does
not now believe to be true;

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (C)Â Â Â Â Â Â Â Â Â  preventing another from acquiring information likely to
affect his judgment in the transaction;

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (D)Â Â Â Â Â Â Â Â Â  selling or otherwise transferring or encumbering property
without disclosing a lien, security interest, adverse claim, or other legal
impediment to the enjoyment of the property, whether the lien, security
interest, claim, or impediment is or is not valid, or is or is not a matter of
official record; or

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (E)Â Â Â Â Â Â Â Â Â Â  promising performance that is likely to affect the
judgment of another in the transaction and that the actor does not intend to
perform or knows will not be performed, except that failure to perform the
promise in issue without other evidence of intent or knowledge is not
sufficient proof that the actor did not intend to perform or knew the promise
would not be performed.

Â 

Tex.
Penal Code Ann. Â§ 31.01(1) (Vernon Supp. 2010).Â  ÂDepriveÂ is defined as:

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (A)Â Â Â Â Â Â Â Â Â  to withhold property from the owner permanently or for so
extended a period of time that a major portion of the value or enjoyment of the
property is lost to the owner;

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (B)Â Â Â Â Â Â Â Â Â  to restore property only upon payment of reward or other
compensation; or

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  (C)Â Â Â Â Â Â Â Â Â  to dispose of property in a manner that makes recovery of
the property by the owner unlikely.

Â 

Tex.
Penal Code Ann. Â§ 31.01(2) (Vernon Supp. 2010).Â  

Â 





[5]We
note the theft statute provides alternative means and methods of committing
theft.Â  See Tex. Penal Code Ann.
Â§Â 31.03.Â  We further note that the State did not allege any particular method of
committing theft.Â  Cf. Geick v. State,
321 S.W.3d 706, 711 (Tex. App.ÂÂHouston [14th Dist.] 2010, no pet.) (when
indictment only alleged theft by deception, State is bound by that alleged
statutory alternative manner and means).Â 
Because the State did not allege any particular statutory manner of
commission, the hypothetically-correct jury charge would include all the
alternative methods of commission contained in the theft statute, including
theft by deception.Â  See Gollihar v. State, 46 S.W.3d 243, 254 (Tex. Crim. App.
2001); Curry v. State, 30 S.W.3d 394
(Tex. Crim. App. 2000); Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997).Â 






[6]Ehrhardt
refers to this document as a Âlist of expensesÂ and the State refers to this
document as a Âdocument.ÂÂ  We will refer
to the document as an accounting for the sake of convenience.Â  We are not suggesting this document was a
formalized accounting.

Â 





[7]443
U.S. 307 (1979).

Â 





[8]Clewis, 922 S.W.2d 126.





[9]Phillips v. State, 640 S.W.2d 293, 294
(Tex. Crim. App. [Panel Op.] 1982).Â  

Â 





[10]Phares v. State, 301 S.W.3d 348, 352
(Tex. App.ÂÂBeaumont 2009, pet. refÂd) (quoting Cox v. State, 658 S.W.2d 668, 671 (Tex. App.ÂÂDallas 1983, pet. refÂd)).





[11]The
exact amount is not specified.Â  





[12]It
is unclear whether it had to be redone or just finished.Â  The plumbing subcontractor testified he had
additional work to do, but did not do it because Ehrhardt walked away from the
job.

Â 





[13]Painter
testified the siding contractor told her the wall had excessive Âgive.Â 





[14]We
will refer to the two lists of expenses as accountings for the sake of
convenience.





[15]We
note Ehrhardt had deposited money from other construction projects in this bank
account both before and after the dispute arose.

Â 





[16]Wilson v. State, 663 S.W.2d 834, 836Â37
(Tex. Crim. App. 1984); Lopez v. State,
316 S.W.3d 669, 676 (Tex. App.ÂÂEastland 2010, no pet.).Â  





[17]We
will refer to this accounting as the second accounting.





[18]Our
own comparison of the second accounting and the receipts revealed a few minor
inconsistencies.Â  While Ehrhardt provided
receipts for many of the entries, the record does not contain receipts for a
number of the expenses listed in the second accounting.Â  Several receipts were not listed in the
second accounting and at least two receipts suggested expenses greater than the
amount contained in the accounting.Â  We
note that many of the receipts included materials which were apparently used
for other construction projects.

Â 





[19]Christensen v. State, 240 S.W.3d 25, 32
(Tex. App.ÂÂHouston [1st Dist.] 2007, pet. refÂd).Â  





[20]Painter
testified she was with Ehrhardt when he opened the account.Â  Moore, the employee of Citizens National Bank
who opened the account, testified Painter was not present in her office when
the account was open, but conceded Painter might have been somewhere else in
the bank.Â  





[21]The
State argues Ehrhardt needed to use this account as a slush fund because there
was a child support lien on his other accounts.Â 
During his grand jury testimony admitted by agreement of the parties,
Ehrhardt acknowledged he had child support liens on some of his other
accounts.Â  The State introduced a letter
from the Texas Attorney GeneralÂs Office notifying the bank that as of October
23, 2008, Ehrhardt owed $21,196.50 in past due child support.Â  

Â 





[22]We note that the Texas Property Code provides
payments for a contract to improve real property are trust funds.Â  Tex.
Prop. Code Ann. Â§ 162.001 (Vernon Supp. 2010).Â  Misappropriation of funds paid for
improvements to real property is a criminal offense under the Texas Property
Code.Â  Tex.
Prop. Code Ann. Â§ 162.031 (Vernon Supp. 2010), Â§ 162.032 (Vernon
2007).Â  Ehrhardt, though, was indicted
under Tex. Penal Code Ann.
Â§ 31.03.Â  Further, the jury was not instructed on these
provisions of the Texas Property Code.Â  The
State does not argue the hypothetically correct jury charge would contain an
instruction on any of these sections of the Texas Property Code.Â  See
Tex. Prop. Code Ann. Â§Â§ 162.001,
162.031, 162.032.Â  The Âhypothetically
correctÂ jury charge cannot completely rewrite the indictment. Â Gollihar,
46 S.W.3d at 253.





[23]See Tex. Prop. Code Ann. Â§Â§ 162.031, 162.032.