**Curtis Lane BAKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–98–00037–CR.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 29, 1998.

Decided Dec. 30, 1998.

Clifton L. Holmes, Holmes Law Office, Longview, for appellant.

Henry Whitley, Big Sandy, Marcus D. Taylor, Wood County Dist. Atty., Quitman, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Curtis Baker appeals from his conviction for theft. He was convicted by the court, which assessed punishment at four years' imprisonment. Baker contends that the evidence is factually and legally insufficient to support the verdict and that trial counsel rendered constitutionally ineffective assistance.

Baker acted as a general contractor to build a house for Louise James. He was added as a signatory to her checking account, which she had opened and was maintaining to hold the funds committed to the building of her new home. He wrote checks to pay for work done on the new house. Two of those checks, one for $4,800.00 and one for $1,150.00, were made out to cash with the notation that they were to be used for a particular purpose. The State based its case primarily upon evidence that those funds were not used on James' house.

Baker first contends that this type of case is not shown by the evidence to be criminal in nature. We must therefore first decide whether this is properly a criminal case, or is a civil dispute only.

The elements of the offense with which Baker was charged are:

(1) a person

(2) with intent to deprive the owner of property

(3) unlawfully appropriates property

(4) without the effective consent of the owner.[1]

█ A line of cases ranging back to *Hesbrook v. State*, 149 Tex.Crim. 310, 194 S.W.2d 260 (1946), has held in various contexts that a claim of theft made in connection with a contract requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property. If no more than intent and appropriation is shown in a contract claim, nothing illegal is apparent, because under the terms of the contracts individuals typically have the right to "deprive the owner of property," albeit in return for consideration. A claim based upon malfeasance in connection with a contract requires proof of the false pretext or fraud in order to become a viable criminal prosecution.[2] *Id.; Roper v. State*, 917 S.W.2d 128, 132 (Tex.App.-Fort Worth 1996, pet. ref'd). Without such proof, the claim is nothing more than a civil claim in contract and is not appropriate for criminal prosecu-

tion. The question is whether proof that the funds were misdirected away from their agreed-upon use to further the purpose of the contract constitutes theft.

█ The State must prove, by evidence of the civil dispute between the parties, that the appellant had not performed the contract and knew he was not entitled to the check, not merely that there is a dispute about the amount rightfully owed. *Phillips v. State*, 640 S.W.2d 293, 294 (Tex.Crim.App. [Panel Op.] 1982); *Reed v. State*, 717 S.W.2d 643, 646 (Tex.App.-Amarillo 1986, no pet.). Further, the mere fact that one fails to return or pay back money after failing to perform a contract, when money was paid in advance for that performance, does not constitute theft. *Hesbrook*, 149 Tex.Crim. 310, 194 S.W.2d 260; *Cox v. State*, 658 S.W.2d 668, 671 (Tex.App.-Dallas 1983, pet. ref'd).

█ Criminal intent may, however, be inferred from the defendant's conduct and the surrounding circumstances. *Lewis v. State*, 715 S.W.2d 655, 657 (Tex.Crim.App.1986); *Coronado v. State*, 508 S.W.2d 373, 374 (Tex. Crim.App.1974); *Gonzalez v. State*, 966 S.W.2d 804, 809 (Tex.App.-Amarillo 1998,

---

1. The prosecution was brought under TEX. PEN. CODE ANN. § 31.03(a), (b)(1) (Vernon 1994), which provides:

   (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
   (b) Appropriation of property is unlawful if:
   (1) it is without the owner's effective consent; . . . .

   TEX PEN.CODE ANN. § 31.01(4) (Vernon 1994) provides:

   (4) "Appropriate" means:
   (A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or
   (B) to acquire or otherwise exercise control over property other than real property.

   TEX. PEN.CODE ANN. § 31.01(3)(A) (Vernon 1994) provides:

   (4) "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:
   (A) induced by deception or coercion; . . . .

   TEX. PEN.CODE ANN. § 31.01(1) (Vernon 1994) provides:

   (1) "Deception" means:
   (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the

   transaction, and that the actor does not believe to be true;
   (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;
   (C) preventing another from acquiring information likely to affect his judgment in the transaction;
   (D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or
   (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

2. *See Wilson v. State*, 663 S.W.2d 834 (Tex.Crim. App.1984); *Peterson v. State*, 645 S.W.2d 807 (Tex.Crim.App.1983).

pet. granted); *Turk v. State*, 867 S.W.2d 883, 887 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). Nevertheless, courts have limited the application of that concept by holding that if a contract is partially or substantially performed, then intent to commit theft through criminal fraud or deception is not shown by the evidence. The distinction between this case and those cited above is that in this case the State offered specific proof that two particular checks were cashed and that the proceeds of those two checks were not used for the construction project.

The right to disburse the funds for the purpose of the construction project was voluntarily given to appellant, so the State was necessarily proceeding on the theory that consent was ineffective due to deception, and so acknowledges in its brief. *See, e.g., Peterson v. State*, 645 S.W.2d 807, 811 (Tex.Crim. App.1983); *Phillips v. State*, 640 S.W.2d 293, 294 (Tex.Crim.App. [Panel Op.] 1982).

█ The State provided evidence that Baker had written two checks against the account for cash. The first check was in the amount of $4,800.00 and contained a notation on the check of "1st Draw Concrete (slab)." The second check was in the amount of $1,150.00 and contained a notation of "1st Draw Rough In Plumbing." The concrete contractor testified that he was paid by three checks from the account for the work done.[3] James testified that Baker did nothing toward the concrete work personally, that when she signed a $4,224.00 check to the concrete contractor she did not know that Baker had already drawn out $4,800.00 for concrete work. She further testified that Baker refused to furnish an invoice documenting the $4,800.00 draw.

The plumber who installed the water and sewer lines for the house testified that he received no cash in connection with his work and that he was paid in three checks, one signed by James and two from the lender for a total of $3,381.67 in accordance with the terms of his invoice.

It is undisputed that Baker cashed both of these checks. He testified that the money obtained from the first check was used to purchase fill dirt for site preparation for the slab in furtherance of the contract. When permitted to reopen the evidence, he presented an invoice of $3,860.00 for clay that was allegedly used as fill dirt for the job site. The invoice, however, indicates only $1,860.00 of the amount being for clay, and it did not specify the job site to which the dirt was delivered.[4]

Baker also testified that he personally earned the money from the second check for work that he did in connecting the water line to city water, preparing the stub out for the septic system, and running the gas line. The plumbing contractor, however, testified that he did the water hookups. Baker testified that he rented a ditching machine to dig the gas and water lines and that he paid permit application fees and perk test fees with the money. He produced no invoices or documentary evidence to support this contention.

Baker directs the Court to *Stockman v. State*, 826 S.W.2d 627 (Tex.App.-Dallas 1992, pet. ref'd), to support his contention that this is rightfully a contract matter. In *Stockman*, a dispute arose between a homeowner and the home builder concerning the terms of their contract. The parties disagreed about the point of completion at which the builder-defendant could take his profit. *Id.* at 629. The entire matter was covered by the written contract between the parties. *Id.* at 634. The defendant had contractual claims to the sums he took, and it was not clear who actually owned the money in question. *Id.* at 635. The court held that the matter was entirely civil in nature and did not invoke criminal jurisdiction. *Id.* at 636.[5]

---

3. Specifically, he was paid with a $501.30 check signed by James, a $4,224.00 check signed by Baker, and a $2,500.00 check issued by the lender, for a total of $7,225.30.

4. There are also three other checks totaling $1,078.41 made out for fill dirt to the site.

5. *See Moncada v. State*, 960 S.W.2d 734, 740 (Tex.App.-El Paso 1997, pet. ref'd) (The contract existed to sell items to a hospital. In that case, there was evidence that the defendant-seller double-billed and over-billed for items delivered to the hospital and engaged in false billing for items not delivered at all. These acts were necessarily not a part of any contractual understanding that was before the jury, and the court concluded that if Moncada used the cash for personal purposes the jury could have readily determined that the

In the present case, however, the contract is silent as to any profit margin available to Baker, and he did not contend at trial that this constituted profit-taking, but instead that the money was used in working on the construction of the house.

Even though there is undisputed evidence that Baker did perform a sizable portion of the overall work on the house, there is specific evidence that he took some of the funds for his own benefit and fraudulently concealed that they were not used for purposes of the contract. Based upon this proof of two particular takings of property for purposes not contemplated by the agreement between the parties, we conclude that this is a proper case for a criminal prosecution.

■■■ Accordingly, we now turn to Baker's remaining argument in this context, which is whether the evidence is sufficient to support the verdict. In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), and *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991), and look to see whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In our review of the factual sufficiency of the evidence, we view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996). Conflicts in the evidence are to be resolved by the fact finder. In doing so, it may accept one version of facts and reject another or reject any of a witness' testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). In so doing, it is the fact finder's job to judge the credibility of the witnesses and the weight to be given their testimony, and it may resolve or reconcile conflicts in the testimony, accepting or rejecting such portions thereof as it sees fit. *Banks v. State*, 510 S.W.2d 592, 595 (Tex.Crim.App.1974). When evidence both supports and conflicts with the verdict, we must assume that the fact finder resolved the conflict in favor of the verdict. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim. App.1993).

■■■ The court had testimony before it from which it could conclude that the two checks were used by Baker for his own purposes, that the money was not used for the reasons stated or for reasons contemplated by the agreement between Baker and James, and that Baker took the money for his own benefit. The evidence is factually and legally sufficient to support the verdict.[6]

■■■ Baker also contends that the date alleged in the indictment was the date of entry into the contract and that the State, by alleging that date as the date of theft, has linked the allegation of intent to the making of that contract. Therefore, he reasons, if the State did not prove intent as of that date, the State has failed in its proof. Baker has cited no authority in support of this contention. However, the alleged thefts occurred in connection with the relationship created by the contract. Thus, in the absence of any request for clarification or objection to the indictment requesting more specificity, it appears that the indictment sufficiently informed Baker of the contention against him. Under TEX.CODE CRIM. PROC. ANN. art. 1.14 (Vernon Supp.1999), most complaints about the sufficiency of an indictment are waived absent a timely complaint.

■■■ Further, the State's proof that the alleged crime was committed on a different date from the one alleged in the indictment does not necessarily invalidate the conviction. The "on or about" language used in this indictment allows the State to prove a date

---

over-billing and false billing were not contractual in nature.)

**6.** It is clear that Baker was a trustee under TEX. PROP.CODE ANN. § 162.002 (Vernon 1995), of trust funds under TEX. PROP.CODE ANN. § 162.001 (Vernon 1995 & Supp.1999), and could have been prosecuted under TEX. PROP.CODE ANN. § 162.031 (Vernon 1995), as a trustee who improperly misused trust funds. This action is defined as a third degree felony under TEX. PROP.CODE ANN. § 162.032 (Vernon 1995).

other than the specific one stated in the indictment. *Garcia v. State,* 981 S.W.2d 683 (Tex.Crim.App.1998); *Sledge v. State,* 953 S.W.2d 253, 256 (Tex.Crim.App.1997). The State is not bound by the date alleged in the indictment and may prove that an offense was committed before, on, or after the date alleged, so long as the date proved is a date anterior to presentment of the indictment and the crime's occurrence is not so remote as to be barred by limitations. *Id.; Scoggan v. State,* 799 S.W.2d 679, 683 n. 3 (Tex.Crim. App.1990). This contention of error is overruled.

■■■ Baker next contends that he received constitutionally ineffective assistance of counsel. The standard of testing claims of ineffective assistance of counsel was set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see Hernandez v. State,* 726 S.W.2d 53, 57 (Tex. Crim.App.1986). In *Strickland,* the Supreme Court admonished that a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. Appellant must prove: (1) that his counsel's representation was deficient; and (2) that the deficient performance was so serious that it prejudiced his defense. This means the appellant must prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *McFarland v. State,* 845 S.W.2d 824, 842 (Tex.Crim.App.1992).

■■■ The review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The burden is on the appellant to overcome that presumption by identifying the acts or omissions of counsel that are alleged to have constituted the ineffective assistance and then to affirmatively prove that they fall below the professional norm for reasonableness. *Jackson v. State,* 973

S.W.2d 954, 956 (Tex.Crim.App.1998). Then, the appellant must prove that counsel's errors, judged by the totality of the representation, denied him a fair trial. Merely showing that they had some conceivable effect on the proceedings is inadequate. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052; *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App. 1996).

■■■ Baker contends that his attorney was ineffective because he did not obtain a witness list from the State before trial. Counsel did request disclosure, but did not obtain an order from the court directing disclosure. The State did not provide a list. The State called three specific witnesses about whom Baker complains on appeal. The State presented Ronnie Box, Wyman Bates, and Ronnie Willingham. Box and Bates were the concrete and plumbing contractors who testified that they were paid by check for the services that were the subject of the checks made out to cash that are the subject of this prosecution. Counsel now argues that the evidence provided from Box and Bates was critical to the prosecution and that trial counsel was ineffective because he did not know their identity, because he lost his opportunity to preclude their testimony at trial, and because he should have known the identity of the key witnesses.

The record does not indicate that counsel did not know the identity of these witnesses, or that he was surprised by their testimony. Further, the trial court offered counsel time after their direct testimony to prepare for cross-examination, if required. Counsel declined the offer and effectively cross-examined the witnesses at length. There is no suggestion of any basis upon which their testimony might have been properly excluded, and none is apparent. Although counsel should have obtained a ruling on his motion to disclose, there is no indication of harm resulting from his failure to do so. This contention is overruled.

The judgment is affirmed.