Reversed and Rendered and Opinion filed July 27, 2006









Reversed
and Rendered and Opinion filed July 27, 2006.

 

            

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00099-CR

____________

 

GEORGE HENRY JACOBS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 

 

On Appeal from the 21st Judicial
District Court

Washington County, Texas

Trial Court Cause No. 13,841

 

 

 

O P I N I
O N

            After a bench
trial, appellant George Henry Jacobs was convicted of the offense of felony
theft by deception.  On appeal, Jacobs challenges the legal and factual
sufficiency of the evidence supporting his conviction, arguing the evidence
only demonstrates a civil contract dispute, and is insufficient to support a
finding of criminal intent.  Because we agree the evidence shows only
appellant’s failure to fully perform a contract, we reverse the conviction,
dismiss the indictment, and render a judgment of acquittal.




 








I.  Factual and Procedural History

            The
complainant, Gordon Pattison, owns properties in Somerville, Burton, Carmine,
and Bluebonnet, Texas.  Pattison wanted someone to perform repair or remodeling
work on the properties in exchange for free rent.  One of Pattison’s tenants
recommended appellant for the job.  On December 3, 2002, appellant and Pattison
entered into a written contract, agreeing inter alia that appellant
would lease the Somerville property for $400.00 per month, but would not be
obligated to pay rent for the first five months.  Instead, appellant would
repair the porch and install a steel roof on the Somerville Property by
February 15, 2003, and repair the windows, front door, and the hardwood floors
“as needed” by April 15, 2003.  The contract required Pattison to pay for the
materials necessary for the roof repairs.  Accordingly, Pattison gave appellant
a check for $200.00 on December 3, 2002, and after appellant produced a list of
roofing materials needed and their cost, Pattison gave appellant a second check
for $1,400.00.  Appellant, however, did not move into the Somerville property.

            Before the
February 15, 2003 deadline to repair the Somerville roof, appellant and
Pattison negotiated a series of agreements for appellant to perform work on
other properties.  These agreements were independent of the December, 2002
contract.  First, appellant installed a wall, closet, bathtub, sink, and toilet
in Pattison’s Burton property.  Pattison originally agreed to pay appellant
$1,000.00 for this project, but because appellant did not provide the fixtures,
Pattison reduced the payment to $850.00.  Although Pattison considered the job
incomplete because appellant did not install a closet shelf, and because a
ventilation pipe bent the soffit on the outside of the house, Pattison paid
appellant for the work.   

            Appellant and
Pattison then verbally agreed appellant would hang doors and lay a linoleum
floor at Pattison’s Carmine property.  Appellant and an assistant performed the
work, and appellant was paid for this project as well.  

 class=Section3>

            Pattison next
agreed to pay appellant $300.00 to  remove a tree leaning on a house owned by
Pattison’s former son-in-law.  The record does not indicate whether appellant
performed or was paid for this work.

            Appellant did
not repair the roof of the Somerville Property by February 15, 2003, as agreed,
and Pattison asked appellant to return the $1,600.00.  Appellant refused, and
Pattison filed charges on or about February 24, 2003.  Detective Michael Davis
of the Brenham Police Department was assigned to the case.  Davis took
Pattison’s statement, and photographed the Somerville property.  

            After
Pattison pressed charges, appellant and Pattison agreed appellant would
renovate the porch on the Somerville property for an additional payment of
$600.00.[1] 
Appellant performed the work, and Pattison paid him.  This was the only project
Pattison considered complete.

            Appellant and
Pattison then orally modified their December, 2002 written contract regarding
the Somerville property, agreeing that appellant would not refund the $1,600.00
for roofing materials and would not repair the roof on the Somerville property,
but instead would perform work at Pattison’s home in Bluebonnet.  Specifically,
they agreed appellant would erect a building, install a kitchen sink and an
outdoor outlet, change a light fixture, reroute a ditch, remove a four-inch
layer of dirt or concrete,[2]
and provide and pour concrete for a driveway.  Appellant and an assistant
worked on the project for six hours a day for the first two days, but then
worked only two hours a day.  On some days, rain prevented appellant from
working on the Bluebonnet project.  When all of the work for the Bluebonnet
driveway was complete except for pouring the concrete, appellant insisted that
Pattison pay 

 class=Section4>

for the concrete.  When
Pattison refused, appellant abandoned the job.  Pattison bought the concrete
for approximately $458.00 and paid a contractor approximately $350.00 to
correct appellant’s installation of the concrete forms and pour the “flat
surface” of concrete.[3] 
Pattison considered pouring the concrete to be the major part of the Bluebonnet
project.

            Before trial,[4]
appellant offered to repay Pattison $1,000.00 immediately and to pay the
remaining $600.00 with a post-dated check.  Unwilling to accept a post-dated
check, Pattison refused.  Pattison never told the investigating detective the
contract had been modified, or that he continued to employ appellant on other
projects after charges were filed.  

            The case was
tried on December 15, 2004, and appellant was convicted of theft of property
worth more than $1,500.00, but less than $20,000.00.  Theft of property of this
value is a state jail felony,[5]
and appellant received a 180-day probated sentence, and was placed on community
supervision for two years.  Appellant was also ordered to pay court costs and
to pay Pattison $1,600.00 in restitution.

II.  Issues Presented

            In his first
and third issues, appellant argues the evidence is legally insufficient to
prove beyond a reasonable doubt that he appropriated $1,600.00 from Pattison by
deception, without Pattison’s effective consent, and with the intent to deprive
Pattison of the funds.[6]
 

 class=Section5>

In his second issue,
appellant argues the evidence is factually insufficient to show he appropriated
the money from Pattison by deception. 

            Appellant’s
argument for each issue is the same: he contends he was wrongfully convicted of
the crime for which he was indicted because the evidence shows only failure to
perform the modified contract.  We agree.

III.  Analysis 

A.        Legal Insufficiency of the
Evidence

            1.         Standard
of Review

            When
reviewing the legal sufficiency of the evidence, we examine the evidence in the
light most favorable to the verdict to determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443 U.S. 307, 318–19 (1979); Mason v.
State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995) (en banc).  We therefore
determine whether any rational trial of fact could have found the essential
elements of felony theft by deception beyond a reasonable doubt.

            A person
commits theft “if he unlawfully appropriates property with intent to deprive
the owner of property.”  Tex. Penal Code
Ann. § 31.03(a) (Vernon Supp. 2005). Appropriation of property is
unlawful if it “is without the owner’s effective consent.”  Tex. Penal Code Ann. § 31.03(b)(1)
(Vernon Supp. 2005); Stewart v. State, 44 S.W.3d 582, 589 (Tex. Crim.
App. 2001) (en banc) (the “crucial element of theft is the deprivation of
property from the rightful owner, without the owner’s consent . . . .”). 
“Consent” is not effective if it is induced by deception.  See Tex. Penal Code Ann. § 31.01(3)(A) (Vernon Supp. 2005).  As relevant to this case, deception means promising performance “that
the actor does not intend to perform or knows will not be performed.”  Tex. Penal Code Ann. § 31.01(1)(E) (Vernon Supp. 2005).  

 class=Section6>

            A claim of
theft made in connection with a contract requires proof of more than an intent
to deprive the owner of property and subsequent appropriation of the property. 
Baker v. State, 986 S.W.2d 271, 274 (Tex. App.—Texarkana 1998, pet.
ref’d).  “If no more than intent and appropriation is shown in a contract
claim, nothing illegal is apparent, because under the terms of [a contract]
individuals typically have the right to ‘deprive the owner of property,’ albeit
in return for consideration.”  Id.  In a contract claim, the State must
prove the defendant did not perform the contract and knew he was not entitled
to the money, not merely that there is a dispute about the amount rightfully
owed.  Id.  The mere fact that one fails to return funds paid in advance
after failing to perform a contract does not constitute theft.  Id.  If money was voluntarily given to the appellant pursuant to a
contractual agreement and there is insufficient evidence in the record to show
the money was obtained by deception, the conviction cannot stand.  Phillips
v. State,  640 S.W.2d 293, 294 (Tex. Crim. App. 1982); Baker, 986
S.W.2d at 274.  In sum, the State must show a rational factfinder could have
found appellant had no intention of fulfilling his obligation under the agreement,
and his promise to perform was “merely a ruse to accomplish theft by
deception.”  See King v. State, 17 S.W.3d 7, 15 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d). 

2.         No Evidence of Deception

            Appellant was
indicted for “unlawfully appropriat[ing], by acquiring or otherwise exercising
control over, property, to-wit: U.S. Currency, of the value of $1,500.00 or
more but less than $20,000.00, from Gordon E. Pattison, the owner thereof,
without the effective consent of the owner, namely, by deception, and
with intent to deprive the owner of the property.” (emphasis added).  When
appellant moved for an instructed verdict on the grounds there was no evidence
of intent to deceive, the State responded, “Your Honor, under the indictment
the State simply alleges a theft, not a theft by deception.  We’re not
saying that the defendant tricked Mr. Pattison into giving him money, simply
that he made a promise, took some money to perform some work, and then didn’t
perform the work.” (emphasis 

 class=Section7>

added).  Nevertheless,
appellant was found guilty of the offense “as charged in the indictment.”

            The theft
statute under which appellant was convicted provides alternative methods of
committing theft.  See Tex. Penal
Code Ann. § 31.03 (Vernon Supp. 2005); see also id. at §§ 31.01(3)(A),
and 31.01(1)(E).  Because the indictment alleges only one of those
methods—theft by deception—appellant could be convicted only if he committed
theft by that method.  See Gollihar v. State, 46 S.W.3d 243, 254–55 (Tex. Crim. App. 2001).  Despite the language of the indictment, the State’s evidence failed
to demonstrate deception, but merely showed appellant failed to perform the
work.  As Pattison agreed, “there wasn’t anything that [appellant] did to trick
[Pattison] into giving him that money.”

3.         No Evidence of Criminal
Intent

            The State
also failed to demonstrate criminal intent.  In response to appellant’s motion
for an instructed verdict, the State summed up its position: “So basically by
delaying the performance of that work and coming up with different excuses, the
State contends that we’ve demonstrated [appellant’s] intent to deprive Mr.
Pattison of the $1,600.00 with no intention of doing the work.”  This
contention is both factually and legally mistaken.

            First, the
State’s characterization of the evidence is not supported by the record, in
part because the State mistakenly focuses on the superceded December 2002
contract.  As a result, the “work” to which the State refers is the Somerville property roof repair.  The State’s exhibits at trial consisted of (1) the
December 2002 written agreement, (2) Pattison’s two cancelled checks, (3) the
list of roof repair materials appellant gave Pattison on December 5, 2002, and
(4) a photograph of the Somerville property taken on or about February 26,
2003, showing the roof repairs had not been performed.  The State questioned
the investigating detective only regarding matters relevant to appellant’s
agreement to purchase roofing materials and perform roof repairs to the Somerville property.  On appeal, 

 class=Section8>

the State maintains its
position that the relevant agreement is the written contract of December 2002:

Here,
Appellant received $1,600 from PATTISON to purchase materials to make repairs
on a rental house.  Appellant did not purchase the materials; Appellant did not
make the repairs; and, Appellant did not return the $1,600 to PATTISON. 
Considering the evidence in the light most favorable to the verdict, it can be
concluded that the Trial Court, as a rational trier of fact, could have found
the essential elements of THEFT, as alleged in the indictment in Cause No.
13,841.

But, Pattison’s testimony
conclusively establishes the December 2002 contract was subsequently modified,
so that appellant was no longer required to repair the Somerville roof or to
apply the $1,600.00 to roof materials:

Q:        So did the defendant then agree that instead of giving you
the $1,600 back for the roofing materials that he was going to provide that
concrete and pour that driveway and the other miscellaneous jobs around the
home?

A:        That’s correct.

* * * * * 

Q:        And you told Mr. Jacobs—I understand under your direct
examination you said, Mr. Jacobs, instead of doing the roof at Somerville just let me hire you or switch it to do the concrete work at your residence?

A:        Right.

Q:        So the contract, then, at that point had been modified
from—that the roof was not going to be complied in a timely manner. So the
initial contract was, then, modified from Somerville to the concrete work at—

A:        [Pattison’s address]—

Q:        —Bluebonnet Hills?

A:        —in Bluebonnet Hills.

 

            Thus, the
only performance at issue is appellant’s performance of the work at Pattison’s
Bluebonnet residence.

 class=Section9>

            The source of
this misunderstanding was identified at trial; Pattison never told Detective
Davis that the contract between appellant and Pattison was modified after
Pattison filed charges, even though, as Davis agreed, the contract modification
explains why the roof repairs in the written contract were not performed.  Davis testified: 

Q:        Would the fact that Mr. Jacobs and Mr. Pattison continued to
have business dealings after the December 3rd check of $200 and the
December 5th check of $1,400 have any impact on your investigation?

A:        If I understand you correctly, that would be work performed
after the check was issued, would that have made a difference on the status of
the report?

Q:        Yes.

A:        Okay.  Of course.  That information, of course, would be
attached to the report.

Q:        And Mr. Pattison didn’t give you any of that other
information, did he?

A:        No, I did not know that.

            Davis further testified that if he had known of the contract modification, he would have
forwarded that information to the district attorney’s office.  

            The State is
correct that criminal intent may be inferred from surrounding circumstances.  See
 Coronado v. State, 508 S.W.2d 373, 374 (Tex. Crim. App. 1974).  But,
failure to perform a promise without other evidence of criminal intent or
knowledge is not sufficient proof that the actor did not intend to perform or
knew the promise would not be performed.  Tex.
Penal Code Ann. § 31.01(1)(E) (Vernon Supp. 2005).  If a contract is
partially or substantially performed, then intent to commit theft through
deception is not shown by the evidence.  Baker v. State, 986 S.W.2d 271,
275 (Tex. App.—Texarkana 1998, pet. ref’d).[7] 


 class=Section10>

            Here, the
State presented no evidence that appellant delayed the Bluebonnet project or
made any excuse for failing to perform.  The State’s evidence instead
establishes that appellant and his assistant spent a minimum of twenty-eight
hours working on the project, and completed the driveway but for pouring the
concrete.  There is no evidence  appellant did not intend to do the work;
rather, he actually performed much of what the modified agreement objectively
required him to do. 

            These facts
are similar to those addressed in Phillips v. State, 640 S.W.2d 293, 294
(Tex. Crim. App. [Panel Op.] 1982).  In Phillips, the defendant
contracted with the complainants to build an addition to their house, and
accepted $6,930.33 as a down payment.  As in the present case, the money was
paid voluntarily.  See id.  The defendant took some measurements and
drew up plans, but did not fully perform the contract.  The Court reversed the
defendant’s conviction, holding that proof of failure to perform is
insufficient to prove theft by deception.  Id. 

            As in Phillips,
here the evidence presented shows only a civil contract dispute, and not the
necessary criminal intent to support appellant’s conviction.  The evidence is
therefore legally insufficient to sustain appellant’s conviction.  See also
Peterson v. State, 645 S.W.2d 807, 812 (Tex. Crim. App. 1983) (en
banc) (reversing conviction when the evidence failed to show the appellant
contractor obtained money by deception); Cox v. State, 658 S.W.2d 668,
671 (Tex. App.—Dallas 1983, pet. ref’d) (reversing conviction when the evidence
showed the defendant failed to fully perform agreed repair and installation
projects in the complainant’s home, and refused to return either the money or
the purchased goods). 

IV.  Conclusion

            We sustain
appellant’s first and third issues, and hold the evidence is legally
insufficient to support the conviction.  If a legal sufficiency challenge is
sustained, we must acquit.  Clewis v. State, 922 S.W.2d 126, 133 (Tex.
Crim. App. 1996) (en banc).  We therefore reverse the conviction, dismiss the
indictment, and render a judgment of acquittal.




Having rendered a
judgment of acquittal, we do not reach appellant’s remaining issue.

 

 

 

 

                                                                        /s/        Eva
M. Guzman

                                                                                    Justice

 

 

Judgment rendered and Opinion filed
July 27, 2006.

Panel consists of Justice Fowler,
Edelman, and Guzman.

Publish — Tex. R. App. P. 47.2(b).









[1] 
Some work to the Somerville porch was included in the original contract.  It is
not clear if this was additional or different work than that originally
provided, or if the parties agreed to substitute for payment for the free rent
originally contemplated.





[2] 
It is not clear whether the material removed was dirt or concrete.





[3]  
Pattison testified, “You had to pour the concrete in two forms.  One would be
the flat surface of it, and then after that set up you’d have to go back and
pour this trough.  And that still never did get done.”  He further testified,
“I never did get the trough portion of the concrete poured . . . .”





[4] 
Pattison identifies the March 22 trial setting without identifying the year. 
Court records show the only March setting of the case was a setting for jury
trial on March 22, 2004.  The case was rescheduled by the trial court, and
appellant subsequently waived his right to a jury trial.





[5] 
Tex. Penal Code Ann. §
31.03(e)(4)(A) (Vernon Supp. 2005).





[6] 
Appellant’s third issue is phrased as a challenge to the trial court’s denial
of appellant’s motion for instructed verdict; however, such a challenge is in
effect a challenge to the legal sufficiency of the evidence to support the
conviction.  Madden v. State, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990)
(en banc).





[7] 
See also Wright v. State, 14-99-00042-CR, 2001 WL 253468, at 6 (Tex.
App.—Houston [14th Dist.] March 15, 2001, no pet.) (agreeing with the
principles discussed in Baker).