NUMBER 13-07-00701-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

ANTONIO F. VERA, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 117th District Court

of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Chief Justice Valdez
 

 A jury found Antonio F. Vera, appellant, guilty on three counts of sexual assault of
a child. See Tex. Penal Code Ann. § 22.011 (Vernon Supp. 2008). The trial court
assessed punishment at twenty five years' confinement for each count, to run concurrently. 
In two issues, Vera: (1) challenges the legal and factual sufficiency supporting his
conviction; and (2) contends that the punishment violates the Eighth and Fourteenth
Amendments to the United States Constitution because it is disproportionate. See U.S.
Const. amends. IIX, XIV. We affirm.

I. Background

 On the evening of October 12, 2006, J.D., a fourteen-year-old boy returning home
from an afternoon of fishing, encountered his father and a group of his father's friends,
including Vera, drinking in front of his house. J.D. went inside and fell asleep in his bed. 
Around 10 or 11 p.m., J.D.'s father woke J.D. up and asked him to walk Vera to his trailer
home down the road. (1) J.D., dressed in boxer shorts, waders, and a t-shirt, obliged. 
According to J.D.'s testimony, when the two reached Vera's trailer home, Vera offered J.D.
three shirts and went inside to get them. Vera then asked J.D. to enter the trailer.

 J.D. testified that when he entered the trailer, Vera was standing a few feet from the
doorway, and he was completely naked and had an erection. J.D. further testified that
Vera tore off J.D.'s clothes, forced J.D.'s mouth to contact his penis by pulling J.D.'s head
down towards it, put his mouth on J.D.'s penis, and put his penis on J.D.'s anus. J.D.
remembered feeling "some stuff" on his back, wiping it off, retrieving his boxer shorts and
t-shirt, and running out of the trailer. Once he reached his home, J.D. outcried to his
mother. 

 S.J., J.D.' s mother, testified that on the evening of October 12, 2006, J.D. told her
that Vera "tried putting his thing in his mouth." After she heard J.D.'s outcry, S.J. picked
up an ax, went into Vera's trailer, encountered Vera near the doorway wearing nothing but
an erection, and tried to "chop off" his penis. S.J. recalled that Vera defended himself
against her attack by hitting her with his cane.

 David Rodriguez and Daniel Hernandez , deputies with the Nueces County Sheriff's
Department, responded to a dispatch call regarding a sexual assault. Deputy Rodriguez
testified that S.J. was very upset and angry, and he noted that J.D. looked to be in "very
serious shock." Deputy Hernandez testified that S.J. was crying hysterically, and he
observed J.D. "starring off" into the distance. Deputy Hernandez further testified that when
he went to Vera's home to investigate the report, Vera immediately started repeating, "I
didn't do anything." After J.D. identified Vera as the assailant, Deputy Hernandez arrested
Vera, escorted him to a patrol car, and found him mobile and not completely helpless. 

 After the incident, J.D. was taken to a hospital, where he recounted what had
happened to Ricardo Jimenez, an interviewer, and Elizabeth Andelman, a forensic nurse
examiner. On cross examination by Vera's counsel, J.D. admitted not telling Jimenez that
Vera's penis touched his anus. Upon further cross examination, J.D. admitted not telling
Andelman about Vera possibly ejaculating on his back because he was scared even
though such information might have aided her forensic examination. 

 Andelman testified that she examined J.D., and she swabbed his mouth, penis, and
anus for DNA evidence. Andelman further testified that she observed bruises on J.D.'s
arms and photographed them. Regarding evidence of forced anal contact, Andelman
stated that she did not observe any injury to J.D.'s anus, but that anal injury is infrequent
because the organ can stretch and heal quickly. Andelman also testified that young men,
as a group, are not eager to talk about anal intercourse when providing a history of assault.

 Robin Olson Castro, a forensic scientist with the Department of Public Safety, tested
the swabs for DNA evidence, and she testified that the penile swab contained a mixture
of DNA from J.D. and Vera. Castro stated that the presence of Vera's DNA on J.D.'s penis
is consistent with the accusation that Vera performed oral sex on J.D. Castro also stated
that it would be very unlikely for Vera's DNA to have transferred to J.D.'s penis from causal
contact, such as Vera handing a tool to J.D. 

 Maria Briones, a registered nurse who works at the county health department, and
Patrick Jennings, clinical manager for the county jail, were called by Vera to testify as to
his health and mobility. Briones testified that Vera did not require assistance to go to the
bathroom. Jennings testified that Vera was placed in the jail's infirmary and that he has
limited mobility because of arthritis. On cross examination by the State, Jennings testified
that Vera had a strong, steady gait and that use of a cane is not representative of upper
body strength.

 Vera did not testify at trial. The three counts of sexual assault of a child that the jury
charge included asked the jury to determine whether Vera intentionally and knowingly
caused: (1) J.D.'s sexual organ to penetrate or contact his mouth; (2) Vera's sexual organ
to penetrate or contact J.D.'s mouth; and (3) Vera's sexual organ to contact J.D.'s anus. 
See Tex. Penal Code Ann. § 22.011(a)(2)(C)-(E). 

 The jury found Vera guilty on all three counts. Vera elected to go before the trial
court for punishment. The trial court assessed punishment at twenty-five years'
confinement for each count, to run concurrently. This appeal followed.

II. Sufficiency of the Evidence

 In his first issue, Vera contends that the evidence is legally insufficient to support
his conviction because only the victim testified that he committed the alleged sexual
assault. Additionally, Vera argues that the evidence is factually insufficient because: (1)
he vehemently denied the accusation; (2) there was ample evidence that he was an invalid
and incapable of assault; and (3) "one could interpret the evidence . . . [to conclude] that
the [J.D.] approached [Vera] for sexual favors", "[Vera] rejected such advances", "then
there had been oral[-]genital contact initiated by [J.D.]", and J.D.'s "state of shock [was] a
mere shame for parents and friends to cover his conduct towards [Vera]."

A. Standards of Review

 In conducting a legal sufficiency review, we view the relevant evidence in the light
most favorable to the verdict to determine whether a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19
(1979)); Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The trier of fact
is the sole judge of the facts, the credibility of the witnesses, and the weight given to
testimony. See Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Beckham v. State,
29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). We do not
reevaluate the weight and credibility of the evidence, and we do not substitute our own
judgment for the trier of fact. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000);
Beckham, 29 S.W.3d at 151. Instead, we consider whether the jury reached a rational
decision. Beckham, 29 S.W.3d at 151.

 When conducting a factual sufficiency review, we view all of the evidence in a
neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will set the
verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust or (2) the verdict is against the great weight and preponderance of the
evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Under the first
prong of Johnson, we cannot conclude that a conviction is "clearly wrong" or "manifestly
unjust" simply because, on the quantum of evidence admitted, we would have voted to
acquit had we been on the jury. Watson v. State, 204 S.W.3d 404, 416 (Tex. Crim. App.
2006). Under the second prong of Johnson, we cannot declare that a conflict in the
evidence justifies a new trial simply because we disagree with the jury's resolution of that
conflict. Id. Before finding that evidence is factually insufficient to support a verdict under
the second prong of Johnson, we must be able to say, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the jury's
verdict. Id. In conducting a factual sufficiency review, we must also discuss the evidence
that, according to the appellant, most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

 "Appellate courts should afford almost complete deference to a jury's decision when
that decision is based upon an evaluation of credibility." Lancon v. State, 253 S.W.3d 699,
705 (Tex. Crim. App. 2008). "The jury is in the best position to judge the credibility of a
witness because it is present to hear the testimony, as opposed to an appellate court who
relies on the cold record." Id. The jury may choose to believe some testimony and
disbelieve other testimony. Id. at 707.

B. Analysis

 Vera contends that the evidence is legally insufficient to support his conviction
because only the victim testified that he committed the alleged sexual assault. However,
the testimony of a child victim alone is sufficient to support a conviction for sexual assault. 
See Tex. Code Crim. Proc. Ann. art. 38.07(a) (Vernon 2005) ("A conviction under Chapter
21, Section 22.011, or Section 22.021, Penal Code, is supportable on the uncorroborated
testimony of the victim of the sexual offense if the victim informed any person, other than
the defendant, of the alleged offense within one year after the date on which the offense
is alleged to have occurred."); Ruiz v. State, 891 S.W.2d 302, 304 (Tex. App.-San Antonio
1994, pet. ref'd) (citing Villalon v. State, 791 S.W.2d 130 (Tex. Crim. App. 1990)). 
Accordingly, Vera's legal sufficiency challenge is overruled.

 As to his factual sufficiency challenge, Vera's asserts that he vehemently denied the
accusation when confronted by Deputy Hernandez and that there was ample testimony
that he was a disabled inmate from Briones and Jennings. The testimony from these three
individuals, Vera argues, establishes that the jury's verdict is against the great weight and
preponderance of the evidence. 

 The jury, however, heard testimony that contradicts Vera's argument from J.D., S.J.,
and Deputy Hernandez. In addition to testifying about the incident, J.D. testified that he
had seen Vera move rails and pipes in his yard, turn on a generator that his older brother
could not turn on, and fix cars. S.J. stated that Vera successfully defended himself against
her ax attack by striking her with his cane. Further, Deputy Hernandez testified that Vera
was mobile and not completely helpless on the night of the incident. Moreover, Vera's
assertion that Briones and Jennings provided ample testimony as to his disability is
misplaced. Briones testified that Vera could go to the bathroom on his own, and Jennings
testified that Vera had a strong, steady gait and that the use of a cane is not indicative of
upper body strength.

 "The jury is the exclusive judge of the credibility of witnesses and of the weight to
be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in
the evidence." Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). In
resolving conflicts in the evidence, a jury "may accept one version of facts and reject
another or reject any of a witness' testimony." Baker v. State, 986 S.W.2d 271, 276 (Tex.
App.-Texarkana 1998, pet. ref'd). In this case, the jury accepted a version of the facts that
envisioned Vera as capable of carrying out the alleged offenses. 

 Vera's final factual sufficiency argument is that J.D. made sexual advances towards
him, succeeded to some extent--which explains the DNA evidence--and then made up
the allegations to conceal his behavior. This argument is advanced without any citation to
the record, perhaps because it is not supported by any direct evidence. See Tex. R. App.
P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made,
with appropriate citations to authorities and to the record."). 

 In any event, there is direct evidence contradicting Vera's argument. During redirect
examination, the State asked J.D. if he was in any way interested in being physical with
Vera, to which J.D. responded, "No." Later, during re-cross examination of J.D. by Vera's
counsel, the following discussion took place:

Q: J.D., if you had wanted to be with [Vera] you wouldn't come in to tell
us that today, would you?


A: No.


Q: You'd be ashamed to tell us that?


A: Why would I want to have sex with him? Why would I want to be near
him? I'm barely wanting to look at him and you're telling me that you
want me to--you're saying I want him to be screwing [me]. That's not
even right, man.


Q: My question is whether or not you would tell us.


A: I would tell you straight up that yeah, I wanted to do it, but why would
I want to do it with him?


Q: Okay.


A: It's a stupid question.


Assuming, out of an abundance of caution, that Vera's final factual sufficiency argument
is adequately briefed, we conclude that all of Vera's factual sufficiency challenges fail
because the evidence is not so weak that the jury's verdict is clearly wrong or manifestly
unjust, nor is the verdict against the great weight and preponderance of the evidence.

 Vera's first issue is overruled.

III. Disproportionate Punishment

 In his second issue, Vera contends that his twenty-five-year sentence is so
disproportionate to the offenses that it constitutes a cruel and unusual punishment. See
U.S. Const. amends. IIIX, XIV. To support his contention, Vera refers us to the United
States Constitution, the Magna Carta, and the Code of Hammurabi. The State argues that
Vera waived his second issue by not raising it with the trial court. We agree.

 To preserve error for appellate review, a party must present at the earliest possible
opportunity a timely objection to the trial court, state the specific grounds for the objection,
and obtain an adverse ruling. Tex. R. App. P. 33.1(a); Dixon v. State, 2 S.W.3d 263, 265
(Tex. Crim. App. 1998). Even certain constitutional guarantees are also subject to
forfeiture if a proper objection was not made at trial. Saldano v. State, 70 S.W.3d 873, 887
(Tex. Crim. App. 2002). Failure to make a specific objection to a disproportionate sentence
in the trial court or a post-trial motion waives any error for appellate review. Quintana v.
State, 777 S.W.2d 474, 479 (Tex. App.-Corpus Christi 1989, pet. ref'd).

 Vera failed to make an objection on the basis of a disproportionate sentence in the
trial court or in a post-trial motion, and he raises this issue for the first time on appeal.
Therefore, Vera's second issue is not preserved for review.

IV. Conclusion

 The trial court's judgment of conviction and sentence is affirmed.


 ________________________

 ROGELIO VALDEZ

 Chief Justice

 

Do Not Publish. Tex. R. App. P. 47.2(b)

Memorandum Opinion delivered and 

filed this the 21st day of May, 2009. 
1. Vera, who was sixty-seven years old at the time, walked with a cane.