

# NUMBER 13-10-00376-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JOSE DE LEON PENA,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Benavides, Vela, and Perkes
### Memorandum Opinion by Justice Perkes

After a jury trial, Jose De Leon Pena, appellant, was convicted of the offense of theft of property valued between $1,500 and $20,000, a state-jail felony, and sentenced to 180 days of confinement in the State Jail Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 31.03(e)(3)(a) (West Supp. 2007). The trial court suspended imposition of sentence, placed appellant on community supervision for a

period of three years, and ordered appellant to pay $9,000 in restitution, court costs, and supervisory fees. Appellant challenges the sufficiency of the evidence, and argues that the evidence merely demonstrates a civil contract dispute, and that it is insufficient to support a finding of criminal intent to commit theft. On appeal, the State concedes error and requests this Court to grant appellant the requested relief.[1] We agree with the parties and reverse the conviction, dismiss the indictment, and render a judgment of acquittal.

## I. FACTUAL BACKGROUND

After firing their first contractor, Noe Perez, the complainant, and his wife Maria Perez, approached appellant regarding the construction of a new law office in the City of Edinburg. Appellant had owned his construction business, "J. Pena Construction," for approximately 18 years, and had built hundreds of homes and numerous commercial structures.

On May 14, 2008, the Perezes entered into a written construction agreement with appellant.[2] The contract provided that appellant's company would be paid a lump sum total of $250,600 for the commercial construction project, and that a $2,000 non-refundable deposit, would be paid upon execution of the agreement. On May 27,

---

[1] While the State's confession of error in a criminal case is an important factor, it is not conclusive and the appellate court must make an independent examination of the merits of any issue raised on appeal. *Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2004).

[2] The agreement provides all disputes under the contract shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association. Appellant testified the complainant wanted to "strike . . . out" the arbitration clause, but that did not happen and the arbitration clause was agreed upon.

2008, the Perezes gave appellant the $2,000 non-refundable retainer fee.[3]

Prior to hiring appellant, the Perezes had employed another contractor to draft the building plans; however, the plans were not approved by the city. Appellant testified that it took three to four weeks to re-draft the original building plans, and that he met with various city inspectors and the fire marshal during the process. Appellant also testified he provided the Perezes a copy of the final building plans which the Perezes initialed. On June 4, 2008, appellant applied for a commercial building permit and paid a $350 fee. On June 9, 2008, the commercial building permit was approved, thereby allowing the construction of the project in a residential area. After the building plans were approved, appellant and the Perezes attended a preconstruction meeting with the city.

On June 9, 2008, the Perezes delivered a $10,000 check, payable to J. Pena Construction, and which included the word "Building" for the description. Appellant testified the Perezes gave him the check for him to commence construction, despite the fact their construction loan had not yet been approved. Both Noe and Maria Perez concurred that those funds were given as an advance. Appellant thereafter hired workers, marked elevation and property lines, measured and marked the location where the building was to be constructed, laid ground work by clearing three to four inches of topsoil, hauled topsoil off the property, and brought in new dirt which was compacted with a backhoe and tractor. The building-plans examiner concluded that all the work was completed to the extent possible until the loan was approved.

Noe Perez applied for a $246,500 bank loan from the Bank of South Texas. On July 17, 2008, his application was presented to the loan committee. On August 18,

---

[3] Although the Perezes both testified they believed the $2,000 deposit was for permits and dirt, they later clarified on cross-examination that the $2,000 was actually the non-refundable retainer.

2008, the loan was approved, but appellant was not approved as the builder.[4] Noe Perez's options were to either apply for a loan with another bank or use another builder, who could be approved by the bank. He decided to use another builder, notwithstanding the fact appellant had a signed contract with the Perezes and appellant had already commenced work under the contract. The contract did not address this contingency and did not provide that the Perezes could in effect fire appellant if the bank did not approve his company as the builder. Appellant wanted to continue his work under the contract and appellant's bank was willing to provide Noe Perez a loan at a half percentage point lower interest. Noe Perez, however, was not interested.

In late August 2008, Noe Perez sent a letter to the City of Edinburg Planning Department to notify it of the change in builders. Noe Perez did not know the date, but he testified that he called appellant and asked for the money back, and that appellant said he would return it in two weeks, during which appellant did not answer phone calls from the Perezes. Appellant testified that he did not answer because Noe Perez was being aggressive, threatening that he had "friends in high places."

On November 4, 2008, a demand letter was sent to appellant from the Law Office of Noe L. Perez seeking reimbursement of building funds in the amount of $12,000. In the demand letter, Noe Perez stated that appellant had requested $2,000 for permit fees and $10,000 as an "advancement." Noe Perez further asserted in the demand letter that he received an unreasonable expense form from appellant for acquired expenses. The demand letter states the following, in relevant part:

---

[4] The record shows the Bank of South Texas later approved appellant as the builder on a large unrelated commercial project. According to appellant's testimony, the bank's disapproval of him as to Noe Perez's building was based on erroneous information given by a third party.

This is my final agreement on the fees.

You sent me an Expense form which includes **a total of $4,915.75** for acquired expenses. The total is unreasonable. You are charging $2,505.75 for a Draft (a computer print out), of the building plans. The City of Edinburg never received a copy of the Blue Prints. They received a Draft of the building plans when they issued out requested permits. I never received a copy of the Blue Prints, either. Therefore, the amount of $2,505.75 for a "Draft" of the building plans is not justifiable. I will pay you $590 for the building Draft, plus all other expenses you requested. This adds up to a total **$3,000** for any and all acquired expenses by you.

(Emphasis in original). In the letter, Noe Perez concluded that he was therefore entitled to be reimbursed for a total amount of $9,000, and that if appellant did not reimburse the money within ten days of appellant's receipt of the letter, further legal action would be taken.

Noe Perez testified that, prior to filing a police report, he sent appellant letters, he saw him at the courthouse, and appellant acknowledged that he owed Noe Perez the money. But Noe Perez also testified that appellant sent him a letter indicating that Noe Perez owed appellant $5,000 for blueprints of the building plans. Noe Perez testified that he never received a draft of the blueprints. Noe Perez admitted, however, that appellant had to redraw the building plans which had been drafted by the previous contractor. Noe Perez testified that it was "ridiculous" that appellant wanted so much money and he concluded that appellant owed him $9,000. Noe Perez testified further that appellant did not produce receipts or an invoice for the work he performed on the property. The only check disbursement in evidence from appellant's bank account relating to Noe Perez's property was the check for the permit fee which was cleared on June 11, 2008.

Appellant testified that he submitted an expense form to Noe Perez which only

5

included the money he had paid on the project and did not take into account the amount of time he and his staff invested. Appellant stated that although there was only one check paid from his bank account [in evidence] relating to this project, he paid some subcontractors with cash and he also had two other bank accounts. Appellant also testified that it was evident that the subcontractors were paid because no liens were placed on the property.

On December 9, 2008, Noe Perez filed a police report, accusing appellant of theft of $10,000 and claiming appellant never performed any work. Investigator Joe Vega of the Edinburg Police Department was assigned to the case. Vega spoke over the phone with appellant once or twice and testified that appellant said he would get around to it, though the money was never returned. Vega also testified that to his recollection, Noe Perez failed to tell him of the construction agreement, that he had not seen Noe Perez's demand letter to appellant, and that he had not had the benefit of seeing the commercial building permit or the building plans appellant drafted. Appellant was arrested on the felony charge of theft, and a $10,000 cash bond was levied.

## II. STANDARD OF REVIEW

When reviewing the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979); *Brooks v. State,* 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.). We therefore determine whether any rational trier of fact could have found the essential elements of theft beyond a reasonable doubt. *See Jacobs v. State*, 230 S.W.3d 225, 229 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

6

## III. DISCUSSION

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2007). Appropriation of property is unlawful if it "is without the owner's effective consent." *Id.* § 31.03(b)(1). "Consent" is not effective if it is induced by deception. *Id.* § 31.01(3)(A) (West 2003). As relevant under the indictment in this case, deception means creating or confirming by words or conduct a false impression of fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true. *Id.* § 31.01(1)(A).

A claim of theft made in connection with a contract requires proof of more than an intent to deprive the owner of property and subsequent appropriation of the property. *Jacobs*, 230 S.W.3d at 229 (citing *Baker v. State,* 986 S.W.2d 271, 274 (Tex. App.—Texarkana 1998, pet. ref'd)). If no more than intent and appropriation is shown in a contract claim, nothing illegal is apparent, because under the terms of a contract, the individuals typically have the right to "deprive the owner of property," albeit in return for consideration. *Id.* In a contract claim, the State must prove the defendant did not

perform the contract and knew he was not entitled to the money, not merely that there is a dispute about the amount rightfully owed. *Id.* The mere fact that one fails to return funds paid in advance after failing to perform a contract does not constitute theft. *Id.* If money was voluntarily given to the defendant pursuant to a contractual agreement and there is insufficient evidence in the record to show the money was obtained by deception, the conviction cannot stand. *Id.* at 229–30 (citing *Phillips v. State,* 640 S.W.2d 293, 294 (Tex. Crim. App. 1982)). For purposes of a theft conviction, the relevant intent to deprive the owner of his property is the accused's intent at the time of taking possession of the property. *Wilson v. State*, 663 S.W.2d 834, 836–37 (Tex. Crim. App. 1984) (en banc).

In *Phillips,* the defendant contracted with the complainants to build an addition to their house, and accepted $6,930.33 as a down payment. 640 S.W.2d at 294. As in the present case, the money was paid voluntarily. *See id.* The defendant took some measurements and drew plans, but did not fully perform under the contract. *Id.* The Court of Criminal Appeals reversed the defendant's conviction, holding that proof of failure to perform is insufficient to prove theft by deception. *Id.*

As in *Phillips,* the evidence presented shows only a civil contract dispute, and not the necessary criminal intent to support appellant's conviction. There is no evidence in the record that appellant did not fully intend to perform under the contract when he accepted the $10,000, and the evidence showed it was Noe Perez's decision to choose another builder while appellant wanted to continue working under the contract. After the Bank of South Texas disapproved appellant as the builder, appellant found a bank willing to approve him as builder and make the loan at a lower interest rate. Under every version of the facts presented by the trial witnesses, appellant performed at least some of

8

the contractual work for the $10,000   While Noe Perez testified appellant had an idea the bank would not approve him as the builder for the loan and his wife, Maria Perez, testified it was her "impression" the $10,000 was a loan, there is no evidence appellant did anything to create a false impression to induce the complainant, Noe Perez, to pay him the $10,000.   We conclude the evidence is legally insufficient to sustain appellant's conviction because there is no evidence in the record of criminal intent to commit theft. *See id.*; *see also Peterson v. State,* 645 S.W.2d 807, 812 (Tex. Crim. App.1983) (en banc) (reversing conviction when the evidence failed to show defendant contractor obtained money by deception); *Jacobs*, 230 S.W.3d at 232 (reversing conviction because the evidence did not show criminal intent to commit theft by deception in a case involving a civil contract dispute between a contractor and property owner).   Accordingly, we sustain appellant's sole issue on appeal.

## IV.   CONCLUSION

Having concluded the evidence is insufficient to support appellant's conviction, we must acquit appellant.   *See Aldrich v. State*, 296 S.W.2d 225, 230 (Tex. App.—Fort Worth 2009, pet. ref'd); *Jacobs*, 230 S.W.3d at 232.   We therefore reverse the judgment of conviction, dismiss the indictment, and render a judgment of acquittal.

_____
GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
30th day of August, 2011.