In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00094-CR

                                                ______________________________

 

 

                            BILLY R. HIGGINBOTHAM, JR.,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 115th
Judicial District Court

                                                            Marion County, Texas

                                                           Trial
Court No. F14065

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley

Dissenting Opinion by Justice Carter








                                                                   O P I N I O N

 

            In a case arising out of the
construction of a log home by Billy R. Higginbotham, Jr., for Joe Huff and his
wife, Higginbotham was convicted by a jury of theft of over $1,500.00 but less
than $20,000.00 and is now appealing that conviction.  See Tex. Penal Code Ann. § 31.03 (West
Supp. 2011).  Under Higginbotham’s
contract, he was to construct the log home on the Huffs’ property for $228,919.00.  Under the payment arrangements utilized by
the parties, Higginbotham would submit to the Huffs what the parties refer to
as a “draw,” this consisting of an invoice or bill for specific items to be
purchased and installed.  Under this
system, although Higginbotham made eight draws totaling $211,450.20, he did not
substantially complete construction on the log home.  Joe Huff testified that although he had
planned to finance the construction out of monies he had set aside for that
purpose, he found it necessary to borrow an additional $100,000.00 to complete
the house and had performed work himself (which he said should have been
performed by Higginbotham with the funds provided).  Although the State charged Higginbotham with
theft greater than $20,000.00 but less than $100,000.00, the jury found
Higginbotham guilty of the lesser-included offense of theft over $1,500.00 but
less than $20,000.00.

            Higginbotham raises two issues on
appeal.  First, Higginbotham argues that
the evidence against him is insufficient to support his conviction.  Second, Higginbotham argues that the trial court
erred in admitting evidence concerning an extraneous offense because the State
failed to prove the extraneous offense beyond a reasonable doubt.

Sufficiency
of the Evidence 

            Higginbotham’s first point of error
challenges the sufficiency of the evidence. 
Higginbotham argues that the testimony in this case concerned only the quality
and expense of the construction as opposed to proof of theft.  Higginbotham claims: 

The
complainant was cherry picking items out of an entire job which was near
completion after he removed Appellant from the job to file criminal charges
against him, apparently to help collect a civil judgment he had previously
taken against him.  What Huff did could
be done with any construction contract to build a house, and should not be held
to constitute theft.

            In summary, viewing the evidence
from the viewpoint most favorable to the State, Appellant was guilty, at most,
of poor business or construction practices.

 

The
State responds that although Higginbotham’s work was shown to be “shoddy,” the
case as presented is not a dispute over the quality of Higginbotham’s work but,
instead, concerns “misrepresentation and unlawful appropriation.”  The State also argues that this case is
distinguishable from this Court’s recent opinion in Ehrhardt v. State, 334 S.W.3d 849, 857 (Tex. App.—Texarkana 2011,
pet. ref’d) (finding evidence contractor committed theft insufficient).

            Under the general theft statute
through which Higginbotham was charged, in order to establish that Higginbotham
committed theft, the State had the burden to establish that (1) Higginbotham,
(2) with intent to deprive the owner (Huff) of property, (3) unlawfully
appropriated property, (4) without the effective consent of the owner.[1]  Tex.
Penal Code Ann. § 31.03; Baker
v. State, 986 S.W.2d 271, 274 (Tex. App.—Texarkana 1998, pet. ref’d).
“Appropriate means any ‘exercise of
control over’ the personalty in question . . . .”  McClain
v. State, 687 S.W.2d 350, 353 n.7 (Tex. Crim. App. 1985).  The Texas Penal Code provides that consent is
ineffective if “induced by deception. . . .” 
Tex. Penal Code Ann. § 31.01(3)(A)
(West Supp. 2011).  “Induce” means “to
bring about, produce, or cause.”  Random House Webster’s Unabridged Dictionary
975 (2d ed. 2001).

            When the charged conduct concerns a
matter for which the alleged victim and the accused had a contractual relationship,
certain concerns arise.  “[A] claim of
theft made in connection with a contract requires proof of more than an intent
to deprive the owner of property and subsequent appropriation of the
property.”  Baker, 986 S.W.2d at 274. 
Neither the mere failure to perform a contract[2]
nor the mere failure “to return or pay back money after failing to perform a
contract, for the performance of which the money was paid in advance,”[3] are sufficient to establish
guilt of theft.  When alleging theft in
connection with a contract, the State “must prove the defendant did not perform
the contract and knew he was not entitled to the money, not merely that there
is a dispute about the amount rightfully owed.” 
Jacobs v. State, 230 S.W.3d
225, 229 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  As this Court explained in Baker, “under the terms of [a contract]
individuals typically have the right to ‘deprive the owner of property,’ albeit
in return for consideration.”  Baker, 986 S.W.2d at 274. 

            The Texas Court of Criminal Appeals
has noted that “what separates lawful acquisitive conduct from theft is
knowledge of a crucial ‘circumstance surrounding the conduct’—that the
acquisition is ‘without the owner’s consent.’” 
McClain, 687 S.W.2d at 354
(footnote omitted).  Thus, the focus of
our inquiry focuses not on whether Higginbotham deprived Huff of property, but
whether the deprivation was unlawfully made (i.e., without Huff’s effective
consent).  See Ehrhardt, 334 S.W.3d at 853–54. 
Although there was no evidence presented that Higginbotham possessed the
requisite criminal intent at the time the contract was formed,[4] this Court has held that the
requisite intent can be formed after the formation of a contract.  Id.
at 856.  “A claim based upon malfeasance
in connection with a contract requires proof of the false pretext or fraud in
order to become a viable criminal prosecution.” 
Baker, 986 S.W.2d at 274.  We emphasize, however, the deprivation of
property cannot occur prior to the formation of the requisite intent.  Cortez
v. State, 582 S.W.2d 119, 120–21 (Tex. Crim. App. [Panel Op.] 1979); Ehrhardt, 334 S.W.3d at 856.  

            The State presented sufficient
evidence that Higginbotham committed theft in connection with accepting a
payment for cabinets that were never paid for.[5]  State’s exhibit 2 includes a “draw,” which
states as follows in pertinent part:

Bills
Paid (Reimbursement to Contractor):  the following is a list of bills or expenses
for work performed on this project that have been paid and for which the
contractor is requesting payment.

 

Name
of Subcontractor/Supplier     Description
of Bill or Expense Paid     Amount
Paid

 

.
. . .

 

White
Oak Cabinets                50% Cabinets                              9280.00 

 

.
. . .

 

Although
the draw includes a section titled “Bills to be Paid” which includes expenses
“that will be paid from the funds requested,” we note the cabinet payment
request was included in the section requesting reimbursement for bills already
paid.  Higginbotham conceded in his testimony
that he never paid the fifty percent down payment on the cabinets contained
within this request for payment. 

            Huff testified that he received a
call from White Oak Cabinets several weeks after the above “draw.”  Huff had just finished talking to
Higginbotham, who had informed Huff that he was leaving town on vacation, but
the cabinets would be installed the following Monday.  The owner of White Oak Cabinets informed Huff
that he had not begun work on the cabinets because the initial fifty percent down
payment had not been made.  Huff testified
that he then called Higginbotham, who “stuttered around and said, well, I got
somebody else to build the cabinets.” 
According to Huff, Higginbotham claimed that White Oak Cabinets
“couldn’t do them fast enough,” so he had hired TLC Cabinets to do the job
instead.  Huff called back to the owner
of White Oak Cabinets, who inquired where TLC Cabinets would have gotten the
“design and measurements” for construction of the custom cabinets.  Huff contacted Higginbotham’s representative
or partner, Dennis Crosby, who informed Huff that he “had the measurements on
the walls and stuff and so [he] just went ahead and had them built.”  Crosby reassured Huff that the cabinets would
be ready for installation the following Monday. 
Huff testified he “knew that was a bunch of bull, you know, because we
custom designed our cabinets.”  Huff then
telephoned TLC Cabinets, whose representative informed Huff that they were not
building any cabinets for Higginbotham and were “not delivering any cabinets
Monday.”  When no cabinets were delivered
the following Monday, Huff’s wife “went down [to White Oak Cabinets] and wrote
a check for $8,000 which was half the price of the cabinets that were
due.”  

            Higginbotham testified that the
$9,280.00 designated in the draw for the cabinet down payment had been applied
to other expenses.  Higginbotham claimed
that he had advised Huff to request another bid from Umberto Medinas Custom
Cabinets,[6] and Huff had told him he
would “talk to [his] wife and we’ll talk about going down and visiting
him.”  While he was waiting for Huff to
decide, Higginbotham testified that Huff told him he had already made the down
payment to White Oak Cabinets. 
Higginbotham testified that at that point, he and Huff agreed to apply
the $9,280.00 shown in the draw request for the cabinets to other expenses and
that Huff voiced no objection to this modification.  Higginbotham presented a list of expenses
totaling $8,394.89.[7]  Higginbotham also introduced receipts
supporting the expenses in the list.  

            A rational juror could have believed
Huff’s testimony over Higginbotham’s testimony. 
Huff denied having agreed to apply the cabinet down payment to other
expenses.  The credibility of witnesses
is the sole province of the jury; we “must give deference to ‘the responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate
facts.’”  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting Jackson, 443 U.S. at 318–19); see Ehrhardt, 334 S.W.3d at 857.  

            The issue in this case is whether
Higginbotham exercised control over Huff’s property without Huff’s effective
consent.  Our inquiry is not whether all
of Huff’s payments were applied to the project,[8]
but rather whether Huff’s consent to the deprivation of property was
effective.  A rational juror could have
found that Higginbotham made false representations with the requisite criminal
intent[9] and that Huff relied upon
those false accusations,[10] concluding that Huff’s
consent to the deprivation was not effective. 
As noted above, consent induced by deception is ineffective.  See
Tex. Penal Code Ann. §
31.01(3)(A).  A rational juror could have
therefore found, beyond a reasonable doubt, that Higginbotham unlawfully
deprived Huff of more than $1,500.00. 
The evidence is sufficient to support the jury’s verdict on the
lesser-included offense of theft in an amount greater than $1,500.00 but less
than $20,000.00.

Error in Admission of Extraneous Offense Evidence

            In his second point of error,
Higginbotham argues that the trial court erred in admitting testimony
concerning an extraneous offense, which the State failed to prove beyond a
reasonable doubt.  The State responds
that neither Tex. Penal Code Ann. §
31.03(c)(1) nor Tex. R. Evid.
404(b) requires such extraneous offenses to be proven beyond a reasonable
doubt.  The State further responds that Tex. Code Crim. Proc. Ann. art. 37.07
(West Supp. 2011) (which requires evidence of unadjudicated offenses at punishment
stage be proven beyond a reasonable doubt) does not apply to the guilt/innocence
phase of the trial.  The State claims it
was not obligated to prove the extraneous offenses beyond a reasonable
doubt.  

            At trial, the State proffered two
witnesses to testify concerning extraneous offenses during the guilt/innocence
phase.  After the testimony of the first
witness, Brian Anthony Bailey, the defense objected.  The trial court sustained the objection,
struck Bailey’s testimony, and instructed the jury to disregard Bailey’s
testimony.  Higginbotham also objected to
the testimony of the State’s next witness, Randall Allen York.  The State conducted a brief examination of
York outside the presence of the jury, and the trial court overruled
Higginbotham’s objection to York’s testimony. 
After direct examination and cross-examination of York, Higginbotham
renewed his objection and argued that the State failed to meet its burden to
prove the extraneous offense beyond a reasonable doubt.  The trial court overruled the renewed
objection.  

            Reviewing York’s testimony, we find
that he testified that he and Higginbotham had a contract for construction
work.  As a part of that contract,
Higginbotham drew $7,500.00,  representing
to York that the money would be used to construct a retaining wall.[11]  On cross-examination, York admitted he could
not recall if the draw was included with other items on a written list and admitted
further that he had agreed that the money could be applied to the expenses for
construction of a driveway.  York
nevertheless insisted that the money was not applied to the construction of the
driveway.  When asked, “Do you know that
he did not use that $7500 in the $476,000 that the house cost,” York responded,
“Yes, for a fact I know that.”  However,
York testified the driveway was done in different sections and at different
times.  Although York testified that he
“paid for all of the driveway minus what was drawn for the driveway,” York
could not remember whether Higginbotham made more than one draw for
construction of the driveway.  Although
he testified he had “put together a detailed schedule,” York had not brought
the detailed list of payments with him to court.  York also testified he had started a website
about Higginbotham, which was “very uncomplimentary” and had obtained a default
judgment against Higginbotham.  

            Although
neither Tex. Penal Code Ann. §
31.03(c)(1) nor Tex. R. Evid.
404(b) explicitly provide that extraneous evidence at the guilt/innocence phase
must be proven beyond a reasonable doubt, it is well-established that such a
requirement is implied.  See, e.g., George v. State, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994)
(extraneous offenses introduced at guilt/innocence must be proven beyond a reasonable
doubt).  

            In
Harrell v. State, the Texas Court of
Criminal Appeals held the standard of admissibility for extraneous offense
evidence to be proof beyond a reasonable doubt. 
884 S.W.2d 154, 161 (Tex. Crim. App. 1994); Toliver v. State, 279 S.W.3d 391, 395 n.3 (Tex. App.—Texarkana  2009, pet. ref’d).  The Texas Court of Criminal Appeals has
recently reaffirmed Harrell, but
clarified that the State is not limited to evidence presented at the initial
determination.  Fischer v. State, 268 S.W.3d 552, 553 (Tex. Crim. App. 2008)
(although State’s pretrial proffer of evidence was insufficient, appellate
review must consider evidence presented at trial).  Thus, even if the trial court does not
conditionally admit the evidence subject to “connecting up,” our appellate
review considers all the evidence in the record.  Id.

            The State failed to establish the
extraneous offenses beyond a reasonable doubt. 
York testified that he had agreed the money, which had originally been
designated to be used for a retaining wall, could be applied to the
driveway.  Although York denied that it
had been spent for the driveway, York was unable to affirm how much was drawn
for the driveway or how much he had personally spent on the driveway.  In essence, the jury was asked to rely on
York’s conclusory statement that the money had not been applied to the
driveway.  Although York’s insistence
that the money had not been applied to the driveway is some evidence, his
conclusory statement to that effect is not sufficient for a rational juror to
conclude the theft occurred beyond a reasonable doubt.  The State has failed to establish beyond a
reasonable doubt either that the $7,500.00 was not applied to the driveway or
that York’s consent was ineffective.  We
agree with Higginbotham that the extraneous offense of theft of $7,500.00 was
not proven beyond a reasonable doubt. 
The trial court erred in admitting York’s testimony.

The Error in Admitting the Extraneous Offense
Was Harmless

            Error in admitting evidence
concerning extraneous offenses is reviewed under the standard for
nonconstitutional error contained in Tex.
R. App. 44.2(b).  Casey v. State, 215 S.W.3d 870, 885
(Tex. Crim. App. 2007) (finding under Rule 44.2(b) error in admitting
photographs was harmless).  Rule 44.2(b)
provides that an appellate court must disregard a nonconstitutional error that
does not affect a criminal defendant’s “substantial rights.”  Tex.
R. App. P. 44.2(b).  An error
affects a substantial right of the defendant when the error has a substantial
and injurious effect or influence in determining the jury’s verdict.  King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  Reversible error has not occurred if the
appellate court, after examining the record as a whole, “has fair assurance
that the error did not influence the jury, or had but a slight effect.”  Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); see Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App.
2002).  

            The Texas Court of Criminal Appeals
has instructed:

In
assessing the likelihood that the jury’s decision was adversely affected by the
error, the appellate court should consider everything in the record, including
any testimony or physical evidence admitted for the jury’s consideration, the
nature of the evidence supporting the verdict, the character of the alleged
error and how it might be considered in connection with other evidence in the
case.  The reviewing court might also
consider the jury instruction given by the trial judge, the State’s theory and
any defensive theories, closing arguments and even voir dire, if material to
appellant’s claim.

 

Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); see Motilla, 78 S.W.3d at 355–57
(overwhelming evidence of guilt can be a factor).

            We first note the character of the
erroneously admitted evidence weighs in favor of a finding of harm.  “Extraneous-offense evidence is ‘inherently
prejudicial, tends to confuse the issues, and forces the accused to defend
himself against charges not part of the present case against him.’”  Sims v.
State, 273 S.W.3d 291, 294–95 (Tex. Crim. App. 2008) (quoting Pollard v. State, 255 S.W.3d 184, 185
(Tex. App.—San Antonio 2008), aff’d,
277 S.W.3d 25 (Tex. Crim. App. 2009)). 
“By its very nature, an improperly admitted extraneous offense tends to
be harmful.  It encourages a jury to base
its decisions on character conformity, rather than evidence that the defendant
committed the offense with which he or she has been charged.”  Jackson
v. State, 320 S.W.3d 873, 889 (Tex. App.—Texarkana 2010, pet. ref’d).  This factor favors a finding of harm.

            The remaining factors, however,
overwhelmingly favor a finding the error did not result in harm.  In considering how the erroneously admitted
evidence might be considered in connection with other evidence in the case, the
emphasis of the evidence by the State should be considered.  Id.
at 890.  The State’s emphasis of the
extraneous offense was rather minimal. 
When considered in connection with the other evidence, York’s testimony
is of minor importance.  The testimony of
York consisted of approximately twenty-one pages out of approximately 300 pages
of testimony presented during guilt/innocence. 
York’s testimony was confusing, contradictory, and conclusory.  Finally, the trial court correctly instructed
the jury that the extraneous offense must be proven beyond a reasonable doubt,
instructing it as follows:

You
are instructed that certain evidence was admitted in evidence before you in
regard to the defendant having committed offenses other than the one for which
he is now on trial.  Such evidence cannot
be considered by you against the defendant as evidence of guilt in this
case.  Said evidence was admitted before
you for the purpose of aiding you, if it does, for the purpose of showing the
defendant’s motive, opportunity, intent, preparation, plan or knowledge, if
any.  You cannot consider the testimony
unless you find and believe beyond a reasonable doubt that the defendant
committed these acts, if any, were committed.

 

“Instructions
to the jury are generally considered sufficient to cure improprieties that
occur during trial” and appellate courts “generally presume that a jury will
follow the judge’s instructions.”  Gamboa v. State, 296 S.W.3d 574, 580
(Tex. Crim. App. 2009).  The trial
court’s instruction serves to mitigate any harm which might have resulted from
the error in admitting York’s testimony. 
The jury was instructed the extraneous offense must have been
established beyond a reasonable doubt, and we will presume the jury followed
that instruction.  After reviewing the
entire record, we have a fair assurance that the error did not influence the
jury or had merely a slight effect.  We
conclude the error did not result in any harm to Higginbotham’s substantial
rights.

Conclusion

            The State did present sufficient
evidence to support a conviction of the lesser-included offense, the offense of
which the jury found Higginbotham guilty. 
A rational juror could have concluded that Higginbotham had deprived
Huff of $9,280.00 by falsely representing that the money in that draw would be
used to make a down payment on cabinets to be built by White Oak Cabinets.  The evidence is also sufficient for a
rational juror to have concluded beyond a reasonable doubt from the
circumstantial evidence presented at trial that Higginbotham possessed the
requisite intent to deprive.  Because the
State failed to prove the extraneous offense beyond a reasonable doubt, the
trial court erred in admitting York’s testimony.  We conclude, however, that although the
admission of this evidence was in error, it did not result in substantial harm
to Higginbotham.  

            For the reasons stated, we affirm
the judgment of the trial court.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

DISSENTING
OPINION

            I
agree that error was committed in allowing the introduction of evidence of an
extraneous offense.  The testimony of
Higginbotham’s previous unfulfilled contract with York did not establish,
beyond a reasonable doubt, that an offense was committed by Higginbotham.  This is a finding that the evidence is
insufficient as a matter of law. 
Therefore, no fact issue exists for jury consideration on that issue.  

            On
the question of whether this error affects a substantial right of the
defendant, the majority opinion recognizes that the nature of the erroneously
admitted evidence favors a finding of harm. 
(“By its very nature, an improperly admitted extraneous offense tends to
be harmful.”) But the majority opinion rejects that conclusion based on other
factors which “overwhelmingly” favor a finding that the error did not result in
harm.  I disagree.  The majority notes that the evidence only
took twenty-one pages of 300, that York’s testimony was confusing and
contradictory, and that the trial court instructed the jury not to consider the
extraneous offense evidence unless the jury found, beyond a reasonable doubt,
that Higginbotham committed the offense. 
None of these reasons are persuasive. 

            The
quantity of the evidence on an extraneous offense was indeed meager, but the
more important issue is the effect it had on a jury when it was considering a
very similar offense.  The fact that
York’s testimony regarding the previous offense was confusing and contradictory
suggests that it was legally insufficient to prove the extraneous offense; I
fail to see how presenting this improper evidence reduces the chance that it
was harmful.  Finally, the fact that the
trial court instructed the jury to consider the extraneous evidence only if it
found beyond a reasonable doubt that Higginbotham committed the offense does
not alleviate the harm.  In essence, the
majority opinion authorizes the impossible: 
the jury is allowed to find, beyond a reasonable doubt, Higginbotham
committed the extraneous offense based on evidence that is legally
insufficient. 

            It
cannot logically be true that the evidence was not harmful because:  (1) it was contradictory and confusing and
therefore innocuous, and also, (2) perhaps the jury found this legally
insufficient evidence met the reasonable doubt standard.  The majority opinion finds “fair assurance”
the error did not influence the jury. 
For the reasons stated, I disagree. 


            I
respectfully dissent. 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          October 25, 2011

Date Decided:             December 14, 2011

 

Publish

 











[1]We
note the theft statute provides alternative means and methods of committing
theft.  See Tex. Penal Code Ann.
§ 31.03.  We further note that the
State did not allege any particular method of committing theft.  Cf.
Geick v. State,  321 S.W.3d 706 (Tex.
Crim. App. 2011) (in theft case, State is bound by alleged statutory
definition).  Because the State did not
allege any particular statutory manner of commission, the
hypothetically-correct jury charge would include all the alternative methods of
commission contained in the theft statute, including theft by deception.  See
Gollihar v. State, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001); Curry v. State, 30 S.W.3d 394 (Tex.
Crim. App. 2000); Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997).

 





[2]Phillips v. State, 640 S.W.2d 293, 294
(Tex. Crim. App. [Panel Op.] 1982).

 





[3]Phares v. State, 301 S.W.3d 348, 352
(Tex. App.—Beaumont 2009, pet. ref’d) (quoting Cox v. State, 658 S.W.2d 668, 671 (Tex. App.—Dallas 1983, pet.
ref’d)).

 





[4]One
method of establishing theft, in connection with a contractual dispute, is to
establish the “appellant had no intention of fulfilling his obligation under
the agreement, and his promise to perform was ‘merely a ruse to accomplish
theft by deception.’”  Jacobs, 230 S.W.3d at 229 (quoting King v. State, 17 S.W.3d 7, 15 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d)). 
The State concedes the amount of work performed in this case negates any
intent to deprive at the time of formation of the contract.





[5]We
note the State presented evidence of additional allegations.  Huff complained about missing concrete
stamps, a number of plumbing issues, electrical work, the installation of the
shingles, the size of the fireplace, the staining of the logs, gaps between
door jambs and drywall, and the failure to install a felt barrier underneath
the log siding on the gable, some of which would speak to the low quality of
the work performed, but not address criminal activity.  Because we find the evidence concerning the
cabinets sufficient to support the jury’s verdict, it is not necessary for us
to decide whether the additional allegations constituted evidence of theft.





[6]Higginbotham
testified, “Now yesterday Mr. Huff said that he contacted TLC Cabinets. . . .
TLC Cabinets is not who I told Mr. Huff to speak with.”  

 





[7]We
note the list of expenses is not signed by Huff, and Higginbotham’s signature
is not dated.  All of the other “draws”
admitted into evidence are signed by Huff. 
Although Huff did not provide a date with his signature on three of the
other eight draws, Higginbotham provided a date with his signature on all of
the other “draws.”  

 





[8]We
note Higginbotham denied any money was drawn and not used on the project.  Higginbotham testified he believed Huff owed
him additional money.  

 





[9]A
rational juror could have concluded, beyond a reasonable doubt, that Higginbotham
had the requisite criminal intent.  The
jury usually must infer intent from circumstantial evidence, rather than direct
proof.  See Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).  The jury can draw reasonable inferences so
long as each inference is supported by evidence presented at trial.  Hooper,
214 S.W.3d at 15–16.  As argued by the
State, a rational juror could have inferred Higginbotham made
misrepresentations when obtaining the “draw” and then lied about it to prevent
discovery of his misdeeds.  

 





[10]
We agree with the State that our opinion in Ehrhardt
is distinguishable from this case.  See Ehrhardt, 334 S.W.3d at 857.  In Ehrhardt,
the victim denied relying on the contractor’s false statements.  Id.  As such, the payment made after the false
representations did not constitute unlawful deprivation under the facts of that
case.   Id.  In this case, there is
sufficient evidence for the jury to conclude Huff relied upon Higginbotham’s
false representations in consenting to the payment.  As such, Huff’s consent was not effective
consent.  See Tex. Penal Code Ann.
§ 31.01(3)(A).





[11]York
also testified to theft of an additional $14,000.00, but the State has limited
its argument on appeal to the above-mentioned $7,500.00.  York testified Higginbotham “stole” an
additional $14,000.00, which “was just an emergency fund that was never
supposed to be drawn.”  York testified he
and Higginbotham had entered into an agreement settling this overdraw.  According to York, this agreement included
additional payments Higginbotham represented he would make “out of his own
pocket,” but Higginbotham never made these payments.